UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LIBERTY INSURANCE COMPANY, et al.,

               Plaintiffs,

      -against-

WOODSIDE CHEMISTS, INC., et al.,

               Defendants.

1:17-cv-06313 (ILG) (CLP)

## DEFENDANT ROBERT B. LANTER, D.O.'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

**MOHEN COOPER LLC**

Andrew Cooper
Kenneth S. Kast
135 Crossways Park Drive, Suite 402
Woodbury, NY 11797
(516) 280-8600

*Attorneys for Defendant*
*Robert B. Lanter, D.O.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. i-ii

PRELIMINARY STATEMENT ........................................................................... 1-2

STATEMENT OF FACTS .................................................................................... 2-4

ARGUMENT ........................................................................................................ 4-13

    POINT I.    MOTION TO DISMISS STANDARD UNDER
                 FRCP 12(b)(6) ........................................................... 4-5

    POINT II.    THE COMPLAINT DOES NOT PROPERLY ALLEGE A
                 KICKBACK SCHEME ............................................... 5-8

    POINT III.    THE COMPLAINT DOES NOT PROPERLY ALLEGE THE SPECIFICS
                 NEEDED FOR A LACK OF MEDICAL NECESSITY FRAUD CLAIM.. 9-10

    POINT IV.    THE AIDING AND ABETTING A FRAUD CLAIM SHOULD
                 BE DISMISSED ........................................................ 11-12

    POINT V.    THE UNJUST ENRICHMENT SHOULD BE DISMISSED.................... 12-13

CONCLUSION....................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Apace Commun., Ltd. v. Burke*
   522 F. Supp. 2d 509 (W.D.N.Y. 2007) ........................................................11

*Armstrong v. McAlpin*
   699 F.2d 79 (2d Cir.1983) .......................................................................11

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S.Ct. 1937 (2009) ..........................................................4

*Banks v. Consumer Home Mortg., Inc.*
   2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) ............................................11

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................4

*Connors v. Lexington Ins. Co.*
   666 F. Supp. 434 (E.D.N.Y. 1987) ...........................................................11

*Corsello v. Verizon N.Y., Inc.*
   18 N.Y.3d 777 (N.Y. 2012) .....................................................................13

*D'Alessandro v. City of New York*
   2017 WL 4641256 (2d Cir. Oct. 17, 2017) ...................................................5

*Eisenstein v. Whitman*
   4 F. App'x 24, 26 (2d Cir. 2001) ...............................................................5

*Farberware, Inc. v. Groben*
   764 F. Supp. 296 (S.D.N.Y. 1991) .............................................................7

*Forgione v. City of New York*
   2012 WL 4049832, at *3 (E.D.N.Y. Sept. 13, 2012)..............................4, 13

*Franco v. English*
   210 A.D.2d 630, 620 N.Y.S.2d 156 (3rd Dept.1994) ...................................11

*Golden Pac. Bancorp v. F.D.I.C.*
   273 F.3d 509, 519 (2d Cir. 2001) ..............................................................12

*Gov't Employees Ins. Co. v. MLS Med. Grp. LLC*
   2013 WL 6384652 (D.N.J. Dec. 6, 2013).....................................................6

*Hines v. Overstock.com, Inc.*
   2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013)............................................13

*Innovative Custom Brands, Inc. v. Minor*
   2016 WL 308805 (S.D.N.Y. Jan. 25, 2016) ...............................................13

*JP Morgan Chase Sec. Litig.*
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) .........................................................7

*Lake Minnewaska Mountain Houses Inc. v. Rekis*
   259 A.D.2d 797, 686 N.Y.S.2d 18 (3rd Dept. 1999) ...................................12

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*
   801 F. Supp. 2d 41 (E.D.N.Y. 2011) ...........................................................5

*Nelson v. MillerCoors, LLC*
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) .........................................................9

*Rockefeller Ctr. Properties, Inc. Sec. Litig.*
   311 F.3d 198, (3d Cir. 2002) ..................................................................................9
*Rombach v. Chang*
   355 F.3d 164 (2d Cir. 2004) ...............................................................................9
*Rosner v. Bank of China*
   349 F. App'x 637 (2d Cir. 2009) .......................................................................11
*Ruotolo v. City of New York*
   514 F.3d 484 (2d Cir. 2008) ...............................................................................4
*Sanofi Sec. Litig.,*
   155 F. Supp. 3d 386 (S.D.N.Y. 2016) ............................................................ 6-7
*Sprint Sols., Inc. v. Sam,*
   206 F. Supp. 3d 755 (E.D.N.Y. 2016) ............................................................ 4-5
*U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*
   895 F. Supp. 2d 872 (N.D. Ill. 2012) ............................................................ 7-8
*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*
   519 F. App'x 890 (5th Cir. 2013) ......................................................................8
*Wiener v. Lazard Freres & Co.*
   241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dept. 1998)...........................................12

**Rules**

FRCP 12(b)(6) ................................................................................................. *passim*
FRCP 9............................................................................................................. *passim*

## PRELIMINARY STATEMENT

Defendant Robert B. Lanter, D.O. ("Defendant" or "Dr. Lanter") submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to FRCP 12(b)(6) because the Complaint fails to meet the pleading requirements of Rule 9 or *Iqbal/Twombly*. The arguments in the memorandum of law in support of the pending motion to dismiss the Complaint by the co-defendant, Pericles S. Hadjiyane, M.D., apply with equal force to the instant motion and so, for the sake of judicial economy, are repeated herein and applied to the allegations in the Complaint asserted against Dr. Lanter.

The insurance companies operating under the Liberty Mutual[1] trade name allege that the defendants entered into a fraudulent scheme by which allegedly "unregulated" pain creams are being supplied to persons injured in motor vehicle accidents. The Complaint alleges in repetitive and conclusory form that Woodside Chemists and Ronika Soni (collectively, the "Pharmacy Defendants") entered into a "kickback scheme" with various healthcare providers[2] (including Dr. Lanter) whereby the prescribing healthcare provider was paid a kickback for prescribing pain cream. Notably, however, despite the Complaint being forty-six (46) pages, it is completely bereft of any detail regarding the purported payment made to Dr. Lanter or any other Healthcare Defendant. Instead, the Complaint just alleges, in repetitive and conclusory form, that the creams

---

[1] The Complaint lists the following companies as Plaintiffs in the caption - Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company. For ease of reference they are referred to collectively as "Plaintiffs" or "Liberty Mutual."

[2] In addition to Dr. Lanter, the Complaint lists the following practitioners as defendants in the caption – Pericles S. Hajiyane, M.D., Leonid Reyfman, M.D., Leonid Litovskiy, P.A., Maxim Tyorkin, M.D., Timothy Canty, M.D. and James A. Griffin, P.A. As the Complaint does not provide details as to any of these individuals (other than their residences and dates of licensure) or their actions, they are referred to collectively as "Healthcare Defendants."

were purportedly formulated in violation of federal and state regulations.

       Simply put, the Complaint does not state a claim for fraud and/or aiding and abetting a fraud against Dr. Lanter because of Liberty Mutual's failure to provide any specifics of the alleged fraud. Indeed, other than the identification of the Pharmacy Defendants, the Healthcare Defendant, and Liberty Mutual itself, the Complaint lacks any specificity as to the alleged fraud. Similarly, the Complaint fails to state a cause of action for unjust enrichment as the Complaint lacks a description of the basic elements of the claim.

       For the reasons set forth herein, the Complaint must be dismissed.

### STATEMENT OF FACTS[3]

       The Complaint alleges that Liberty Mutual has filed this lawsuit to recover $20,500 which "the Defendants have wrongfully stolen from Liberty Mutual." Complaint at ¶ 1. Additionally, the Complaint indicates that it seeks a declaration that Liberty Mutual is not required to pay an additional $222,000 in fraudulent billing (Complaint at ¶ 1) which clearly is the motivating factor for the suit, given the economics of the damages claim.

       The Complaint further alleges that the Pharmacy Defendants have "billed New York State automobile insurers approximately $2,000 to in excess of $6,000 for a single tube" of the allegedly fraudulent pain creams. Complaint at ¶ 2. However, at no point does the Complaint identify any specific patient whose "fraudulent" pain cream was paid for by any of the ten (10) Liberty Mutual companies. Additionally, the Complaint never identifies: (1) any specific patient who was provided with a particular pain cream; (2) any specific healthcare provider who prescribed a particular pain cream to a specific patient; (3) any individual patient's symptoms which purportedly could have been treated by a less expensive alternative treatment; (4) any

---

[3] As this motion is pursuant to FRCP 12(b)(6), the factual allegations in the Complaint are presumed to be true, but solely for the purposes of this motion; nothing contained herein shall be deemed to be an admission.

payment purportedly made by Liberty Mutual for the "fraudulent pain cream;" (5) any less expensive alternative treatment which purportedly could have been provided to the unnamed patient; (6) any individual patient's symptoms were allegedly not ameliorated by the "fraudulent" pain cream; and (7) the date and amount of any payment that was allegedly made to the healthcare provider in exchange for the prescription.

Given the fact that the Pharmacy Defendants allegedly billed an average of $4,000 per tube (based on the allegations in Complaint ¶ 2), there could not be any more than five or six tubes which are the subject of the fraud and unjust enrichment claims, yet the Complaint lacks any specificity as to the most basic elements of the claims.

Rather than provide any specifics of the alleged fraudulent scheme, the Complaint alleges generally that after the "scheme began in 2015" (Complaint ¶ 6), the defendants engaged in the following conduct:

> (i)     Produced and dispensed the Fraudulent Compounded Pain Creams pursuant to predetermined fraudulent protocols designed solely to financially enrich themselves, based on prescriptions solicited by Woodside Chemists, without regard for the topical efficacy of the compounded pain creams or the availability of a wide range of commercially available, FDA approved medications proven to have therapeutic effects, which are available at a fraction of the cost;

> (ii)   Participated in illegal, collusive agreements in which Woodside Chemists solicited and received formulaic, medically unnecessary prescriptions from licensed physicians and/or their associates for the Fraudulent Compounded Pain Creams produced by Woodside in exchange for unlawful kickbacks paid by Woodside Chemists; and

> (iii)  Woodside Chemists engaged in illegal bulk compounding by producing and exclusively dispensing large quantities of the Fraudulent Compounded Pain Creams in set formulations, in violation of Federal and New York State regulatory and licensing requirements imposed on pharmacies, drug manufacturers and outsourcing facilities

Complaint ¶ 4.

The Complaint contains four causes of action which seek declaratory relief and damages

3

against the Pharmacy and Healthcare Defendants.  The First Cause of Action seeks a declaration

that Liberty Mutual should not be required to pay Woodside $222,000 in pending and previously

denied claims because the bills were allegedly the product of one of the three theories of fraud.

Complaint ¶¶ 167-170.  The Second Cause of Action seeks recovery of $20,500 under a fraud

theory against "all Defendants" based upon the bills and submissions being allegedly improper as

the product one of the three theories of fraud.  Complaint ¶¶ 171-177.  The Third Cause of

Action seeks recovery solely as against the Healthcare Defendants for aiding and abetting the

Pharmacy Defendants' fraud.  Complaint ¶¶ 178-185.  The Fourth Cause of Action seeks

recovery against "all Defendants" under a theory of unjust enrichment.  Complaint ¶¶ 186-191.

## ARGUMENT

### I.   MOTION TO DISMISS STANDARD UNDER FRCP 12(b)(6)

Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167

L.Ed.2d 929 (2007), a FRCP 12(b)(6) motion examines whether the pleading contains enough facts

to render the underlying legal theory plausible.  *See generally Ruotolo v. City of New York*, 514

F.3d 484 (2d Cir. 2008) (affirming dismissal of complaint and denial of leave to replead where

amended complaint failed to plead "enough facts to state a claim to relief that is plausible on its

face" under *Twombly*).  As supplemented by *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949

(2009), "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of 'entitlement to relief.'"

In applying the *Iqbal/Twombly* plausibility test, this Court stated, in *Forgione v. City of New*

*York*, 2012 WL 4049832, at *7 (E.D.N.Y. Sept. 13, 2012), that a "claim is facially plausible when

'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" *See also Sprint Sols., Inc. v. Sam*, 206 F. Supp. 3d 755, 760 (E.D.N.Y. 2016) ("only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'") (alterations in original).

Since the Complaint contains a state law fraud claim, it is subject to FRCP 9(b)'s heightened pleading standards which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Conclusory allegations of fraud are insufficient. *See generally D'Alessandro v. City of New York,* 2017 WL 4641256, at \*4 (2d Cir. Oct. 17, 2017) ("D'Alessandro's complaint contains mere conclusory allegations of fraud…none of which we accept as true") ; *see also Eisenstein v. Whitman*, 4 F. App'x 24, 26 (2d Cir. 2001) (Summary Order) ("Finally, the district court correctly determined that Eisenstein's allegations of fraud against PSI were wholly conclusory and did not satisfy the heightened pleading requirements for fraud set out in Rule 9(b) of the Federal Rules of Civil Procedure").

## II.   THE COMPLAINT DOES NOT PROPERLY ALLEGE A KICKBACK SCHEME

As this Court has noted, the pleading requirement of "Rule 9(b) is intended to serve several purposes: to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, to protect a defendant against the institution of a strike suit, and to discourage the filing of complaints as a pretext for discovery of unknown wrongs." *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 53 (E.D.N.Y. 2011). In the instant matter, the Complaint fails all of Rule 9(b)'s requirements as it broadly paints all defendants as being involved in a kickback scheme and tarnishes each defendants' reputation without ever identifying any specifics of the scheme.

One of the main theories alleged in the Complaint is that Liberty Mutual should be entitled

to recover payments made for the "fraudulent pain creams" because they were purportedly a product of a kickback scheme. The allegations of a kickback scheme are repeated on no less than twenty (20) occasions in the Complaint (*see* Complaint ¶¶ 3, 4, 6, 134-144, 162, 169, 173, 180, 189), but the Complaint lacks the most basic of details of the alleged kickbacks. Although the Complaint identifies the eight (8) Healthcare Defendants by name, the only specific reference to any Healthcare Defendant is the paragraph which contains the practitioner's name and date of licensure in New York. There is no particularity about what Dr. Lanter specifically did to partake in the purported fraudulent scheme.

Similarly, the Complaint lacks description of any payment, and does not even allege when the payments began or even the method of payment. Additionally, the Complaint does not at any point identify the particular patient who received a "fraudulent pain cream" or the payment which Liberty Mutual purportedly paid and would now like to recover from the Pharmacy Defendants. The bottom line is that the fraud claim based upon "kickbacks" is unsupported by any factual basis and was simply fabricated in order to justify dragging Dr. Lanter and the other Healthcare Defendants into this case and create a claim that might attract the Court's attention.

When pleading fraud premised on a kickback scheme it is important to actually plead the specifics of the alleged fraud. *See generally Gov't Employees Ins. Co. v. MLS Med. Grp. LLC*, 2013 WL 6384652, at *10 (D.N.J. Dec. 6, 2013) ("To the extent the fraudulent nature of the bills is based on the allegation that MLS obtained its GEICO-insured patients as a result of a kickback arrangement with referring doctors, the Amended Complaint likewise fails to allege fraudulent billing with any particularity").

In the matter of *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 399 (S.D.N.Y. 2016), Judge Castel of the Southern District dismissed a similarly deficient complaint on FRCP 9(b) grounds, noting that "plaintiffs plead that Ponte learned that other employees in her department processed

6

'improper inducement payments.' They do not, however, allege any specific circumstances— from who, when, and in what context—she learned that employees had been making improper inducements payments." *See also Farberware, Inc. v. Groben*, 764 F. Supp. 296, 303 (S.D.N.Y. 1991) ("[T]his section of the Amended Complaint contains only the allegation that he 'and/or' AMC paid kickbacks to Groben. While such actions constitute the type of information that is likely to be particularly within the knowledge of the defendants, this averment, made on information and belief, is insufficient under Rule 9(b)").

Similarly, in the matter of *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005), Judge Stein of the Southern District dismissed a kickback claim involving JP Morgan Chase and Enron under FRCP 9(b), finding that

> The charge that JPM Chase's officers violated Sections 18 U.S.C. 1005, as well as 215, by receiving "kickbacks" in exchange for loans to Enron suffers from the same lack of support in the factual allegations. Plaintiffs claim that the benefit JPM Chase executives obtained was the opportunity to invest in LJM2 and other Enron SPEs that had unusually high rates of return for investors. Nevertheless, there are no particular factual allegations that support the conclusory assertion that these investment opportunities were provided as "kickbacks," let alone that these opportunities were offered with fraudulent intent.

*Id*. at 632.

Within the fertile ground of *qui tam* litigation premised upon alleged kickbacks for medical referrals, the Courts have made clear that allegations of kickback schemes lacking in specifics as to payments and motivation fail to properly plead fraud claims under FRCP 9(b). In *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharm., Inc.*, 895 F. Supp. 2d 872 (N.D. Ill. 2012) the court dismissed a kickback claims under FRCP 9(b), stating:

> The Court finds that Relator has not met the Rule 9(b) specificity requirements with regards to the allegations concerning several fraud categories, including the allegations involving cash and gift kickbacks to physicians, prescription recycling, falsified customer copay records being issued to customers, and the use of another pharmacy's Medicare Supplier Billing Number. In all these categories, no single instance is definitively identified. For instance, in regards to doctor kickbacks, the allegations are that an employee saw prescription reports detailing

prescriptions per doctor and that checks that were issued to doctors for those
prescriptions (although no specific check or payment is ever identified). There is
no linkage of a specified kickback check to a specified prescription or to a
specified patient.  Nor is a specific check ever linked to a specified doctor
(although a group of specified doctors are named), on a specified date, upon order
of a specific employee.

*Id*. at 879.

Similarly in *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890 (5th

Cir. 2013), the Fifth Circuit affirmed the dismissal of a complaint alleging kickbacks in which the

relator:

Alleges WCCH violated the AKS by inducing physicians to provide improper
referrals for lab services.  The elements of the AKS violation must also be
pleaded with particularity under Rule 9(b), because they are brought as a FCA
claim.  Nunnally's complaint merely offers sweeping and conclusory allegations
of "verbal agreements" between WCCH and "various physicians," without a
shred of detail or particularity.  We are given no information on the contents of
those agreements, the identity of any physicians, actual inducements, or improper
referrals.  The sole "specificity" in the complaint is an "example" of an agreement
to charge physicians $3.60 for a blood test, while later charging Medicare $10.60
for the same test.  This "example" is insufficient because it does not allege, nor
reliably indicate, that the two differing pay scales constitute "remuneration" to the
physicians.  It does not even indicate that these amounts are real rather than
hypothetical.  The complaint does not specify who in particular was involved in
this "agreement," or how it constituted an illegal kickback.

*Id*. at 894 (internal citations omitted).

In this case, the Complaint fails FRCP 9(b) as the allegations of kickbacks are pleaded as

basic generalized statements that Dr. Lanter and the other Healthcare Defendants as a class were

allegedly paid unspecified kickbacks for referring patients for "fraudulent pain creams."  This

allegation woefully fails the requirements of FRCP 9(b).  To prove a claim of fraud based upon a

kickback – a serious allegation against a medical professional – the claim must have some

particularly as to who made the kickback, when it was made, and the amount of the kickback.

Liberty Mutual hopes to survive dismissal so that it may go on a fishing expedition.  That should

not be permitted by this Court.  As the kickback claim in this case lacks these basic factual

elements, it must be dismissed.

### III. THE COMPLAINT DOES NOT PROPERLY ALLEGE THE SPECIFICS NEEDED FOR A LACK OF MEDICAL NECESSITY FRAUD CLAIM

Liberty Mutual's alternate fraud theory is that the Pharmacy Defendants provided "fraudulent pain creams" based on prescriptions solicited by Woodside "without regard for the topical efficacy of the compounded pain creams or the availability of a wide range of commercially available, FDA approved medications proven to have therapeutic effects, which are available at a fraction of the cost."   Complaint ¶¶ 4, 159, 169.  This theory fails the most rudimentary pleading requirements for a fraud claim based on lack of medical necessity.

As explained by the Second Circuit in *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004), "[t]his Court has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *See also Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 672 (E.D.N.Y. 2017) ("Claims premised on fraud must meet Rule 9(b) of the Federal Rules of Civil Procedure's heightened pleading standard, which requires pleadings to "state with particularity the circumstances constituting the alleged fraud"); *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) ("Thus, Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue").

Similar to the alleged kickback scheme, Liberty Mutual's fraud claim premised on the alleged billing fraud, by which Dr. Lanter and the other Healthcare Defendants misstated the medical necessity of the pain creams, must be dismissed under FRCP 9(b) because it lacks the requisite specificity.  Indeed, the Complaint does not specify the statements made, the content of the statement, the date of the statement, where it was made, or how it was made, nor does the

Complaint even attempt to explain how the statements were fraudulent or directly attributable to any bill or statement to Dr. Lanter.  In fact, although the Complaint alleges that Liberty Mutual was purportedly defrauded into paying for bills for the "fraudulent pain cream," the Complaint never alleges: (1) any specific patient who was provided with a particular pain cream; (2) that Dr. Lanter or any other specific health care provider prescribed a particular pain cream to a specific patient; (3) the individual patient's symptoms which purportedly could have been treated by a less expensive alternative treatment; (4) the payment purportedly made by Liberty Mutual for the "fraudulent pain cream"; (5) the less expensive alternative treatment which purportedly could have been provided to the unnamed patient; or (6) the individual patient's symptoms were allegedly not ameliorated by the "fraudulent pain cream."

Given the scant number of bills which could potentially have been paid by Liberty Mutual, the failure to plead these elements with particularity justifies dismissal of the fraud claim.  Indeed, the Complaint alleges at ¶¶ 2, 58 and 151, that the Pharmacy Defendants allegedly billed "approximately $2,000.00 to in excess of $6,000.00 for a single tube," which would average to $4,000 per tube.  <u>As Liberty Mutual only seeks $20,500 in damages, the claim is over no more than five or six tubes of pain cream.  Given that there are eight (8) Healthcare Defendants, it is likely that many of the Heathcare Defendants did not even participate in the alleged fraud</u>.  Put simply, there is not enough in the Complaint to make out a plausible claim for fraud on this basis.

Casting further doubt on the plausibility of Liberty Mutual's fraud claim is that, since the Complaint names ten (10) different Liberty Mutual Companies and eight (8) Healthcare Defendants, it is unlikely, if not impossible, that each plaintiff could have been injured by this alleged scheme or that each Healthcare Defendant aided and abetted the purported injury.

As such, it is respectfully submitted that Liberty Mutual's fraud claim should be dismissed.

## IV.   THE AIDING AND ABETTING FRAUD CLAIM SHOULD BE DISMISSED

To state a claim for aiding and abetting fraud, a plaintiff "must show 1) the existence of a fraudulent scheme, 2) that the defendant had actual knowledge of the fraud, and 3) that the defendant provided substantial assistance to the fraudulent scheme." *Rosner v. Bank of China*, 349 F. App'x 637, 638 (2d Cir. 2009) (Summary Order); *see also Franco v. English*, 210 A.D.2d 630, 633, 620 N.Y.S.2d 156 (3rd Dept. 1994).  As was noted by this Court in *Banks v. Consumer Home Mortg., Inc.*, 2003 WL 21251584, at *17-18 (E.D.N.Y. Mar. 28, 2003), "the knowledge requirement for aiding and abetting liability is actually a higher degree of scienter than required for fraud liability...Therefore, New York law and Rule 9(b) require allegations which can support a 'strong inference' of fraudulent intent." *See also Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983) ("Awareness and approval, standing alone, do not constitute substantial assistance.").

In the instant matter, the aiding and abetting claim fails for two reasons.  First, since the Complaint fails to plead fraud with particularity under FRCP 9(b) as discussed above, Liberty Mutual cannot plead a cause of action for aiding and abetting fraud under FRCP 9(b), especially considering the even higher pleading standard under this type of fraud claim.  *See Apace Communs, Ltd. v. Burke*, 522 F. Supp. 2d 509, 518 (W.D.N.Y. 2007) ("Plaintiffs' fraud claims, and all their claims that are based upon allegations of actual fraud, must be dismissed for failure to comply with Rule 9(b).  That includes not only Counts 1 and 2, the claims for fraud and aiding and abetting fraud, but the negligent misrepresentation claim, Count 4, which also "must be pled in accordance with the specificity criteria of Rule 9(b)...").

Additionally, since the sole allegation of knowledge and scienter by Dr. Lanter and the other Healthcare Defendants is the conclusory allegation that the Healthcare Defendants must have known that Woodside was purportedly ineligible to bill (Complaint at ¶ 180), the Complaint fails the requirement of alleging with particularity that the Healthcare Defendants knew and intended to

violate the law.  *See Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 445 (E.D.N.Y. 1987)

("[A]bsent a fiduciary duty, 'the 'scienter' requirement scales upward—the assistance rendered

must be knowing and substantial.'  Thus, there must be some showing of intent to violate the []

laws or knowledge of such violation.") (internal citations omitted).  The Complaint is bereft of any

factual allegation of intent to violate the law or knowledge thereof.

Therefore, it is respectfully requested that this claim be dismissed as well.

## V.  THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

To state a cause of action for unjust enrichment under New York law, a plaintiff must assert

that (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and

(3) that the circumstances are such that equity and good conscience mandates the defendant should

return the money or property to the plaintiff.  *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519

(2d Cir. 2001); *see also Lake Minnewaska Mt. Houses v. Rekis*, 259 A.D.2d 797, 686 N.Y.S. 2d 186

(3rd Dept. 1999); *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dept.

1998).

As perhaps an afterthought, the final cause of action alleged in the Complaint seeks

recovery for alleged unjust enrichment.  Complaint ¶¶ 186-191.  However, the Complaint makes

little effort to develop the claim.  The cause of action contains six paragraphs, most of which

reiterate allegations contained in the prior forty-three (43) pages of the Complaint.  In support of

this claim, the Complaint just alleges that:

> The Defendants have been enriched at Liberty Mutual's expense by Liberty
> Mutual's payments, which constituted a benefit that Defendants voluntarily
> accepted and profited from, as a result of, among other things, the payments
> received and the receipt of kickback payments, notwithstanding their improper,
> unlawful, and unjust fraudulent billing scheme.

Complaint ¶ 189.

Although this cause of action is pleaded as unjust enrichment, it is clearly just a fraud

claim masquerading as an unjust enrichment claim.  Indeed, the sole paragraph in the Complaint which discusses the basis for the alleged recovery indicates that it is premised upon the alleged "kickback payments" and "unjust fraudulent billing scheme."  Since this theory is the essence of the fraud claim, Liberty Mutual may not escape the requirements of FRCP 9(b) by calling it unjust enrichment.  *See generally Innovative Custom Brands, Inc. v. Minor*, 2016 WL 308805, at \*4 (S.D.N.Y. Jan. 25, 2016) ("If an unjust enrichment claim is 'premised on fraudulent conduct,' it is subject to Rule 9(b)'s particularity requirement.").

As noted by Judge Johnson of this Court in *Hines v. Overstock.com, Inc.*, 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013):

> According to the New York Court of Appeals, "unjust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."

*Id*. at \*11 citing *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012).

In the instant matter, the Complaint seeks to back door an unjust enrichment claim against Dr. Lanter, but it fails to satisfy the basic elements of the cause of action because there is no factual allegation that Dr. Lanter received any money.  There is no specificity in support of this claim at all.

Further, even assuming that the Court were to consider the claim as a non-fraud cause of action, it would still fail under *Twombly* as the allegations of a kickback scheme fail to provide factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *See generally Forgione,* 2012 WL 4049832, at \*3.

Thus, it is respectfully requested that the unjust enrichment claim be dismissed.

## <u>CONCLUSION</u>

Considering the foregoing, Defendant's motion should be granted in its entirety.

Dated:    January 31, 2018

Respectfully submitted,

**MOHEN COOPER LLC**
*Attorneys for Robert B. Lanter, D.O.*

Andrew Cooper (AC6512)
Kenneth S. Kast (KK9354)
135 Crossways Park Drive, Suite 402
Woodbury, NY 11797
(516) 280-8600

14

## <u>AFFIRMATION OF SERVICE</u>

Kenneth S. Kast, an attorney duly admitted to practice before this Court, hereby affirms

that, on January 31, 2018, Robert B. Lanter, D.O.'s Notice of Motion to Dismiss the

Complaint, Memorandum of Law in Support, and Affirmation in Support by Andrew Cooper,

Esq, dated January 31, 2018, were caused to be served by me via electronic filing and regular

mail upon the attorneys for the parties designated at the following address:

Barry I. Levy, Esq.
Michael A. Sirignano, Esq.
Christopher M. Casa, Esq.
**RIVKIN RADLER LLP**
926 RXR Plaza
Uniondale, NY 11556-0926

*Attorneys for Plaintiffs*

Steven J. Harfenist, Esq.
Neil S. Torczyner, Esq.
**HARFENIST KRAUT & PERLSTEIN, LLP**
3000 Marcus Avenue, 2nd Floor East
Lake Success, NY 11042

*Attorneys for Defendants Woodside Chemists, Inc., Ronika Soni, and Pericles S. Hadjiyane,
M.D.*

Nicholas P. Bowers, Esq.
**GARY TSIRELMAN, P.C.**
129 Livingston Street
Brooklyn, NY 11201

*Attorneys for Defendant Lam C. Quan, M.D.*

David F. Katz, Esq.
**REVAS CHACHASHVILI & ASSOCIATES, P.C.**
108-18 72 Avenue, Second Floor
Forest Hills, NY 11375

*Attorneys for Defendants Leonid Reyfman, M.D. and Leonid Litovskiy, P.A.*

Robert E. Dash, Esq.
**DASH LAW FIRM, PC**
PO Box 280
Farmingdale, NY 11735

*Attorneys for Defendant Maxim Tyorkin, M.D.*

Ashley Andrew-Santillo, Esq.
**MUNAWAR & ANDREWS-SANTILLO LLP**
420 Lexington Avenue, Suite 2601
New York, NY 10170

*Attorneys for Defendants Timothy Canty, M.D. and James A. Griffin, P.A.*

Dated:   January 31, 2018
        Woodbury, NY 11797

_____
Kenneth S. Kast

16