UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE COMPANY,          Docket No.:
LIBERTY INSURANCE CORPORATION, THE FIRST        1:17-cv-06313(ILG)(CLP)
LIBERTY INSURANCE CORPORATION, LM
INSURANCE CORPORATION, LIBERTY MUTUAL
MID-ATLANTIC INSURANCE COMPANY, LIBERTY
COUNTY MUTUAL INSURANCE COMPANY, LM
PROPERTY and CASUALTY INSURANCE COMPANY,
SAFECO COMPANY OF INDIANA, and AMERICAN
STATES INSURANCE COMPANY,

                        Plaintiffs,

        -against-

WOODSIDE CHEMISTS, INC., RONIKA SONI, LAM C.
QUAN, M.D., LEONID REYFMAN, M.D., LEONID
LITOVSKIY, P.A., ROBERT B. LANTER, D.O., MAXIM
TYORKIN, M.D., PERICLES S. HADJIYANE, M.D.,
TIMOTHY CANTY, M.D., JAMES A. GRIFFIN, P.A.

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION BY DEFENDANTS WOODSIDE CHEMISTS, INC. AND RONIKA SONI TO DISMISS

                               Respectfully submitted,

                               RIVKIN RADLER LLP
                               926 RXR Plaza
                               Uniondale, New York 11556-0926
                               Telephone:    (516) 357-3000
                               *Counsel for Plaintiffs*

Of Counsel:
Michael A. Sirignano, Esq. (MS 5263)
Barry I. Levy, Esq. (BL 2190)
Priscilla D. Kam, Esq. (PK 1505)

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ..........................................................................................2

ARGUMENT ...............................................................................................................6

I.     The Standards on This Motion............................................................................6

II.    The Pharmacy Defendants' Motion to Dismiss Should be Denied in its Entirety..............7

     A.    Liberty Mutual's Claim for Common Law Fraud is Sufficiently Pleaded ............8

          (i)    The Pharmacy Defendants' Argument Regarding Kickbacks Is a Red-Herring ..................................................................................10

          (ii)   The Pharmacy Defendants' Arguments Regarding Pleading Lack of Medical Necessity and Compounding Fraud Fail ................................16

     B.    Liberty Mutual's Unjust Enrichment Claim is Sufficiently Pleaded ....................20

     C.    The Pharmacy Defendants' Motion Should be Denied to the Extent That it Seeks Dismissal of Liberty Mutual's Declaratory Judgment Claim in Favor of No-Fault Collections Arbitration ..........................................................22

III.   To the Extent That the Court Finds a Defect in the Complaint, Liberty Mutual Requests Leave to Replead .................................................................................25

CONCLUSION.............................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
   2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005)........................................................10

Allstate Ins. Co. v. Halima,
   2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009)........................................................9

Allstate Ins. Co. v. Hisham Elzanaty,
   929 F. Supp. 2d 199 (E.D.N.Y. 2013) ........................................................23

Allstate Ins. Co. v. Mun,
   751 F.3d 94 (2d Cir. 2014)........................................................23, 24

Allstate Ins. Co. v. Rozenberg,
   771 F. Supp. 2d 254 (E.D.N.Y. 2011) ........................................................17

Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,
   2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009)........................................................9

Anderson News, L.L.C. v. Am. Media, Inc.,
   680 F.3d 162 (2d Cir. 2012)........................................................25

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) ........................................................6, 7, 15

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)........................................................6, 8, 13, 15

United States ex rel. Chorches v. Am. Med. Response, Inc.,
   865 F.3d 71 (2d Cir. 2017)........................................................14

Cleveland v. Caplaw Enters.,
   448 F.3d 518 (2d Cir. 2006)........................................................2, 7

Daniel v. Long Is. Housing Partnership, Inc.,
   2009 WL 702209 (E.D.N.Y., March 13, 2009) ........................................................6

Farberware, Inc. v. Groben,
   764 F. Supp. 296 (S.D.N.Y. 1991) ........................................................15

FragranceNet.com, Inc. v. FragranceX.com, Inc.,
   679 F. Supp. 2d 312 (E.D.N.Y. 2010) ........................................................7

Globaltex Group, Ltd. v. Trends Sportswear, Ltd.,
   2009 WL 1270002 (E.D.N.Y. 2009)........................................................7

Gov't Emples. Ins. Co. v. IAV Med. Supply,
  2013 U.S. Dist. LEXIS 28609 (E.D.N.Y. Feb. 8, 2013)........................................................14

Gov't Emples. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.,
  2013 U.S. Dist. LEXIS 135888 (E.D.N.Y. July 12, 2013).....................................................14

Gov't Emples. Ins. Co. v. Vill. Med. Supply, Inc.,
  2014 U.S. Dist. LEXIS 37764 (E.D.N.Y. Feb. 28, 2014)......................................................14

Gov't Employees Ins. Co. v. MLS Med. Grp. LLC,
  2013 U.S. Dist. LEXIS 171983 (D.N.J. Dec. 6, 2013).........................................................15

James v. Gardner,
  2004 U.S. Dist. LEXIS 23174 (E.D.N.Y. Nov. 10, 2004)....................................................18

JP Morgan Chase Sec. Litig.,
  365 F. Supp.2d 596 (2005) .................................................................................................15

Liberty Insurance Corporation v. Mohuchy,
  E.D.N.Y. Dkt. No. 1:14-cv-02168-SJ-JO ...........................................................................14

Liberty Mut. Ins. Co. v. Excel Imaging, P.C.,
  879 F. Supp. 2d 243 (E.D.N.Y. 2012) ................................................................................23

Liberty Mutual Insurance Company, et al. v. Advanced Medical Diagnostics of
  Queens, P.C., et al., E.D.N.Y. Docket No. 1:13-cv-03758-ENV-LB ....................................23

Mason Tenders Dist. Council Pension Fund v. Messera,
  1996 U.S. Dist. LEXIS 8929 (S.D.N.Y 1996).....................................................................13

Oliver Schools, Inc. v. Foley,
  930 F.2d 248 (2d Cir.1991)................................................................................................25

Petrucelli v. Hasty,
  605 F. Supp. 2d 410 (E.D.N.Y. 2009) ..................................................................................6

In re Sanofi Sec. Litig.,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016)................................................................................15

Sharkey v. Quarantillo,
  541 F.3d 75 (2d Cir. 2008)..................................................................................................6

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., et al.,
  2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008)........................................................9, 13, 17

State Farm Mut. Auto. Ins. Co. v. Grafman,
  655 F. Supp. 2d 212 (E.D.N.Y. 2009) ............................................................................9, 13

State Farm Mut. Auto. Ins. Co. v. Rabiner,
    2010 U.S. Dist. LEXIS 119961 (E.D.N.Y. 2010)................................................9, 20

Travelers Ins. Co., v. Carpenter,
    411 F.3d 3323 ..........................................................................................................24

Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,
    517 F.3d 104 (2d Cir. 2008)............................................................................2, 7, 21

Wexner v. First Manhattan Co.,
    902 F.2d 169 (2d Cir. 1990)....................................................................................15

Wilson v. Toussie,
    2003 U.S. Dist. LEXIS 23756 (E.D.N.Y. Oct. 8, 2003).........................................15

Zido v. Werner Enters.,
    498 F. Supp. 2d 512 (N.D.N.Y. 2006) ...................................................................18

**Statutes**

21 U.S.C. § 353a ..............................................................................................................19

21 U.S.C. § 353a(a) ..........................................................................................................18

21 U.S.C. § 353a(a)(2) ......................................................................................................18

Education Law §§ 6530(38) and 6811(7) .................................................................11, 15

N.Y. Ins. Law §§ 5101 et seq. (New York's Comprehensive Motor Vehicle
    Insurance Reparations Act)......................................................................................20

11 N.Y.C.R.R. §§ 65 et seq. ("No-Fault Laws") ..........................................................20

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 2, 6, 7

Fed. R. Civ. Proc. 15(a) ....................................................................................................25

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

## PRELIMINARY STATEMENT

Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company (collectively, "Plaintiffs" or "Liberty Mutual") respectfully submit this memorandum of law in opposition to the motion by Defendants, Woodside Chemists, Inc. ("Woodside Chemists") and Ronika Soni ("Soni")(collectively, the "Pharmacy Defendants") to dismiss the claims in Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Liberty Mutual commenced this action to terminate a fraudulent scheme involving the submission of fraudulent "No-Fault" insurance charges for medically unnecessary, illusory, and formulaic compounded "pain creams," which were intentionally created, prescribed, and dispensed in large quantities without tailoring the medications to the individual needs of any patient, all in violation of regulatory and licensing requirements. The Pharmacy Defendants, ignoring both the detailed allegations in Liberty Mutual's Complaint and the overwhelming precedent in the Second Circuit, cherry-pick and mischaracterize various allegations in the Complaint in a frivolous attempt to dismiss Liberty Mutual's fraud, unjust enrichment and declaratory judgment claims. The Pharmacy Defendants' proposed grounds for dismissal are – with some slight and entirely cosmetic variations – the same arguments that time and again have been raised, and rejected, by virtually every court in this District to consider them.

Liberty Mutual's Complaint supports its claims for relief with over 40 pages of specific, detailed factual allegations regarding the fraud scheme that easily allow the Court and the parties to infer (if not conclude definitively) that the Defendants are liable for the submission of the

fraudulent billing. The Pharmacy Defendants' assertion of various technical points are counterintuitive on their face and do not withstand any serious scrutiny. In addition, the Pharmacy Defendants' fact-sensitive argument that the medically unnecessary, illusory, and formulaic compounded pain creams (the "Fraudulent Compounded Pain Creams") were actually prescribed and dispensed in accordance with the rules promulgated by the United States Food and Drug Administration ("FDA") is not only inaccurate, it is inappropriate for resolution on a motion to dismiss.  In short, the Pharmacy Defendants' arguments for the dismissal of Plaintiffs' declaratory judgment, unjust enrichment, and common law fraud claims are meritless and completely at odds with well-settled authority of this Court.

Accordingly, the Pharmacy Defendants' motion to dismiss should be denied.

## **STATEMENT OF FACTS**[1]

Liberty Mutual has pleaded the Defendants' fraudulent scheme in sufficient detail within the body of the Complaint. See Docket No. 1, passim. Liberty Mutual respectfully refers the Court to the Complaint for the full contours of the Defendants' scheme, inasmuch as it is impossible to fully describe every aspect of the Defendants' fraudulent conduct in a relatively short memorandum of law. Briefly, however, and as described more fully in the Complaint:

(i)     Woodside Chemists purports to be a neighborhood pharmacy, but is illegally engaged in bulk "compounding," exclusively dispensing large quantities of the Fraudulent Compounded Pain Creams in set formulations, without tailoring the medications to the individual needs of any patient. The Fraudulent Compounded Pain Creams are not approved by the FDA, yet Woodside Chemists intentionally assembled a combination of drug ingredients with unproven topical effects for the sole purpose of creating exorbitantly priced pain cream products - for which it billed New York State automobile insurers approximately $2,000.00 to in excess of $6,000.00 for a single tube.  The Pharmacy Defendants engaged in this scheme

---

[1] As the Defendants move to dismiss pursuant to Rule 12(b)(6), this statement of facts is derived entirely from the Complaint and matters of which the Court may take judicial notice. Accordingly, the facts set forth herein should be accepted as true for purposes of this motion. See, e.g. Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted); see also Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

knowing that there were a wide range of commercially available, FDA-approved medications with proven therapeutic effects available at a fraction of the cost that could have been dispensed to the patients. See Docket No. 1, ¶ 2, and passim.

(ii)     To implement their fraudulent scheme, Woodside Chemists and Soni – its alleged owner – entered into illegal, collusive arrangements involving the payment of unlawful kickbacks to licensed physicians and/or their associates working at various multidisciplinary medical "clinics" that treat patients with No-Fault insurance benefits (the "No-Fault Clinics"), in order to generate unnecessary prescriptions for the Fraudulent Compounded Pain Creams. The Fraudulent Compounded Pain Creams were produced by Woodside Chemists in large quantities, were not medically necessary, and were dispensed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly received them. See Docket No. 1, ¶ 3, and passim.

(iii)    Compounded drug products are only appropriate in limited circumstances, should be formulated for an individual patient's needs, and should not be prescribed and dispensed as a matter of course. The Pharmacy Defendants, however, blatantly exploited the No-Fault insurance reimbursement system by entering into collusive relationships with healthcare professionals (the "Prescribing Defendants") to ensure that the Fraudulent Compounded Pain Creams were dispensed again and again to numerous Insureds involved in minor fender-bender type accidents, generating hundreds of thousands of dollars in fraudulent billing to insurers. See Docket No. 1, ¶¶ 68-69, and passim.

(iv)     As part of the collusive arrangement with the Prescribing Defendants, the Pharmacy Defendants produced and distributed "prescription stamps," bearing the names, ingredients, and concentrations of the predetermined and formulaic compounded products, which stamps the Prescribing Defendants then used to stamp their official New York State prescription pads to prescribe the Fraudulent Compounded Creams. Through the use of the specially stamped and marked prescriptions, the Pharmacy Defendants steered the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams as part of a predetermined treatment, billing and kickback scheme. See Docket No. 1, ¶¶ 73-82, and passim.

(v)      In addition to the "prescription stamps," the Pharmacy Defendants gave the Prescribing Defendants pre-printed "Letter of Medical Necessity" forms for the Prescribing Defendants to submit to insurers to attempt to justify the compounded drug products as medically necessary. The "Letter of Medical Necessity" forms were actually pre-printed, boilerplate, and often left blank. Through the use of the pre-printed, boilerplate Letters of Medical Necessity, the Pharmacy Defendants steered the Prescribing Defendants to attest to the purported medical necessity of the Fraudulent Compounded Pain Creams and conceal that the prescription and dispensation of the compounded drug products was part of a predetermined treatment, billing and kickback scheme. See Docket No. 1, ¶¶ 83-94, and passim.

3

(vi)     In keeping with the fact that the Fraudulent Compounded Creams were prescribed pursuant to the Defendants' fraudulent scheme intended to generate profits from insurers, Woodside Chemists' Fraudulent Compounded Pain Creams (i) had no medical efficacy based on the purported symptoms of the patients receiving the compounded products; (ii) were prescribed and administered repeatedly as first line therapy contrary to evidenced-based medical practices; and (iii) were prescribed without any legitimate reason to provide the patients with unproven topical creams, when there are many other widely accepted, proven effective alternatives with well documented therapeutic benefits commercially available at considerably lower costs. Moreover, the Prescribing Defendants routinely include multiple refills of the Fraudulent Compounded Pain Creams in their initial prescriptions - often doubling or tripling the total amounts ultimately billed to Liberty Mutual - without regard for whether the Fraudulent Compounded Pain Creams actually provided any therapeutic relief to the Insureds. See Docket No. 1, ¶¶ 103-126, and passim.

(vii)    As part of the predetermined protocol, the Prescribing Defendants produced examination reports that were generic, preprinted, and boilerplate, designed to justify continuing, voluminous and excessive healthcare services that the No-Fault Clinic providers purported to render to Insureds thereafter - including the prescription of Fraudulent Compounded Pain Creams.  Notably, many of the Prescribing Defendants' initial examination reports and follow-up examination reports made no mention whatsoever of the specific Fraudulent Compounded Pain Creams the Insureds were prescribed. See Docket No. 1, ¶¶ 127-133, and passim.

(viii)   In furtherance of the fraudulent scheme, the Pharmacy Defendants participated in illegal, collusive arrangements in which the Prescribing Defendants (along with the other prescribing providers) prescribed the medically unnecessary Fraudulent Compounded Pain Creams in exchange for unlawful kickbacks paid by the Pharmacy Defendants. In exchange for kickbacks, the Prescribing Defendants intentionally prescribed, or purported to prescribe, the Fraudulent Compounded Pain Creams to patients of the No-Fault Clinics -- knowing that they were not medically necessary -- pursuant to the fraudulent predetermined treatment, billing and kickback protocol, without regard to genuine patient care, without regard to pharmacologic outcomes, and without regard to cost and attention to fiscal responsibility. But for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams, which were not individually tailored to meet a unique need of a particular patient, in large quantities. See Docket No. 1, ¶¶ 134-144, and passim.

As the Court may note, the allegations regarding Woodside Chemists' submission of fraudulent bills to Liberty Mutual are not made in a vacuum. Rather, they are supported by considerable factual detail, even at the pleading stage and in advance of discovery. For example,

the Complaint sets forth: (i) detailed facts regarding the specially marked, "set formulations" of Fraudulent Compounded Pain Creams marketed and dispensed by the Pharmacy Defendants; (ii) detailed facts regarding how the Fraudulent Compounded Pain Creams were not medically necessary and were prescribed by the Prescribing Defendants and dispensed by the Pharmacy Defendants without regard to genuine patient care (iii) detailed facts regarding the "prescription stamps" and "Letters of Medical Necessity" produced and distributed by the Pharmacy Defendants to the Prescribing Defendants to facilitate prescriptions for the Fraudulent Compounded Pain Creams and steer the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams; (iv) detailed facts regarding how the prescription and dispensation of Woodside Chemists' compounded creams was contrary to evidenced-based medical practices; and (v) detailed facts demonstrating that but for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams, which were not individually tailored to meet a unique need of a particular patient. See Docket No. 1, passim.

In further support of Liberty Mutual's allegations, Liberty Mutual included a chart identifying 77 claim-specific bills for the Fraudulent Compounded Pain Creams, identified by the date of mailing, the billing codes corresponding to the various ingredients, the charges for the ingredients, and the total charge for each prescription for the Fraudulent Compounded Pain Creams.[2] See Docket No. 1, Ex. 1. Liberty Mutual also included numerous examples of the actual prescriptions – including the "prescription stamps" – used by each of the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams to insureds. See Docket No. 1, Ex. 2. Liberty Mutual also included numerous examples of the template "Letters of Medical

---

[2] This chart does not reflect that the Prescribing Defendants routinely include multiple refills of the Fraudulent Compounded Pain Creams in their initial prescriptions – which result in double or triple the total amounts ultimately billed to Liberty Mutual. See Docket No. 1, ¶¶ 126, and passim.

Necessity" – many of which were blank or incomplete – which were provided by the Pharmacy Defendants to the Prescribing Defendants to attempt to provide a false justification for the medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, Ex. 3.

Based on these allegations, among others, Liberty Mutual asserts common law fraud, aiding and abetting fraud, and unjust enrichment claims against the Defendants, through which it seeks to recover the more than $20,500.00 it paid in reliance on the fraudulent billing. See Docket No. 1, ¶¶ 178-191. In addition, Liberty Mutual seeks a declaratory judgment to the effect that it is not liable to pay any of Woodside Chemists' pending, fraudulent billing, which is alleged to be in excess of $222,400.00. See Docket No. 1, ¶¶ 167-170.

## ARGUMENT

### I.     The Standards on This Motion

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal only is appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face. Sharkey v. Quarantillo, 541 F.3d 75, 92 (2d Cir. 2008). Thus, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "plausibility" requirement does not mandate a universal standard of heightened fact pleading. Petrucelli v. Hasty, 605 F. Supp. 2d 410, 417 (E.D.N.Y. 2009); see also Daniel v. Long Is. Housing Partnership, Inc., 2009 WL 702209, * 4 (E.D.N.Y., March 13, 2009)("The Court does not, therefore, require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face")(internal quotation and citation omitted). More recently, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, noting that "[d]etermining whether a complaint states a plausible claim for relief [is] . .

. a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104, 115 (2d Cir. 2008) (internal citation omitted); see also Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." FragranceNet.com, Inc. v. FragranceX.com, Inc., 679 F. Supp. 2d 312, 324 (E.D.N.Y. 2010)(internal quotations and citations omitted); see also Globaltex Group, Ltd. v. Trends Sportswear, Ltd., 2009 WL 1270002, * 4 (E.D.N.Y. 2009)("In reviewing a Rule 12(b)(6) motion, the task of the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence...").

## II.   **The Pharmacy Defendants' Motion to Dismiss Should be Denied in its Entirety**

Distilled to their essence, the Pharmacy Defendants' arguments for dismissal of the claims in Liberty Mutual's Complaint amount to the following:

(i)     a contention that Liberty Mutual's common law fraud claim fails to satisfy the requirements of Rule 9(b), because Liberty Mutual failed to state specific facts in support of its allegations that Woodside Chemists and the Prescribing Defendants engaged in collusive kickback arrangements and/or in support of its allegations that the Fraudulent Compounded Pain Creams were not medically necessary and were prescribed without regard for medical necessity;

(ii)    a contention that Liberty Mutual's claim for unjust enrichment is insufficiently pleaded; and

(iii)   a contention that this Court should abstain from hearing Liberty Mutual's declaratory judgment claim, because the Defendants have already commended arbitration proceedings and collections lawsuits.

As discussed below, none of these arguments has any merit, and the Pharmacy Defendants' motion to dismiss should be denied in its entirety.

### A.   Liberty Mutual's Claim for Common Law Fraud is Sufficiently Pleaded

The Pharmacy Defendants argue that Liberty Mutual's claim for common law fraud should be dismissed because Liberty Mutual failed to set forth sufficient facts in support of its claims. See Def. Memo at pp. 6-17. The Pharmacy Defendants are wrong.

Throughout the Complaint, Liberty Mutual set forth detailed facts which support its contention that the Defendants submitted fraudulent bills seeking payment for the Fraudulent Compounded Pain Creams, including that: (i) the Pharmacy Defendants intentionally assembled combinations of expensive drug ingredients without regard to the efficacy of the combinations; (ii) the Fraudulent Compounded Pain Creams were intentionally prescribed by the Prescribing Defendants and dispensed by the Pharmacy Defendants without regard to genuine patient care; (iii) the "prescription stamps" and "Letters of Medical Necessity" were produced and distributed by the Pharmacy Defendants to the Prescribing Defendants to steer the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams; (iv) the prescription and dispensation of the compounded creams was contrary to evidenced-based medical practices; and (v) the Pharmacy Defendants and Prescribing Defendants engaged in a collusive relationship with virtually no involvement by, or consideration of, the patients; and (vi) but for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, passim. These allegations, accepted as true, are more than sufficient for Liberty Mutual's claim for common law fraud to survive a motion to dismiss.

Though the Pharmacy Defendants spill considerable ink urging the Court to apply the standard set forth in Twombly and its progeny so as to dismiss Liberty Mutual's claims, their

request is predicated on a misapplication of the <u>Twombly-Iqbal</u> standard, and a failure to acknowledge Liberty Mutual's extensive range of factual allegations supporting its claims. The Pharmacy Defendants also deploy a familiar tactic in seeking dismissal of Liberty Mutual's claims – namely, they state highly generalized rules of fraud and pleading, but ignore the more specific precedent that has been developed by this and other Courts within the Second Circuit when dealing with fraudulent No-Fault schemes. <u>See</u> Def. Memo at pp. 6-17. Then, the Pharmacy Defendants cherry-pick and mischaracterize certain allegations in the Complaint, arguing that Liberty Mutual has not met the more generalized pleading standard with respect to Rule 9(b). The Pharmacy Defendants' arguments are without merit.

This Court repeatedly has held that similar allegations – that a group of defendants knowingly misrepresented that they were eligible to collect No-Fault benefits, when in fact they were not, because they were illegally incorporated, provided medically unnecessary services, or paid kickbacks – are sufficient for purposes of Rule 9(b). <u>See, e.g.,  State Farm Mut. Auto. Ins. Co. v. Rabiner</u>, 2010 U.S. Dist. LEXIS 119961 (E.D.N.Y. 2010) (denying motion to dismiss common law fraud and unjust enrichment claims based on allegations of fraudulent incorporation); <u>State Farm Mut. Auto. Ins. Co. v. Grafman</u>, 655 F. Supp. 2d 212 (E.D.N.Y. 2009)(denying motions to dismiss RICO, common law fraud, and unjust enrichment claims predicated on allegations of fraudulent licensure and medically unnecessary services, and kickbacks); <u>Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.</u>, 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009) (denying motions to dismiss RICO, common law fraud, and unjust enrichment claims predicated on allegations of fraudulent licensure and medically unnecessary services); <u>Allstate Ins. Co. v. Halima</u>, 2009 U.S. Dist. LEXIS 22443, *6 (E.D.N.Y. 2009) (same); <u>State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., et al.</u>, 2008 U.S. Dist. LEXIS 71156

(E.D.N.Y. 2008) (Glasser, J.) (denying motions to dismiss RICO, common law fraud, and unjust enrichment claims predicated on allegations of fraudulent licensure, medically unnecessary services, and kickbacks); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 238 (E.D.N.Y. 2008); AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666, at *40 (E.D.N.Y. Feb. 22, 2005) (denying motion to dismiss fraud and unjust enrichment claims predicated on medically unnecessary and cost-inflated medical equipment).

These cases are conspicuously absent from the Pharmacy Defendants' motion to dismiss.

(i)    The Pharmacy Defendants' Argument Regarding Kickbacks Is a Red-Herring

Instead of addressing the governing case law in the Second Circuit, the Defendants make a frivolous attempt to defeat Liberty Mutual's fraud claim by deliberately attacking a limited portion of the Complaint's allegations regarding kickbacks. This effort to recast the Complaint as premised solely on kickbacks is a red-herring because the Complaint as a whole makes clear that the Defendants' scheme to submit fraudulent bills for the Fraudulent Compounded Pain Creams is, in fact, a scheme involving multiple false and fraudulent statements and misrepresentations, all calculated to induce Liberty Mutual to pay the bills submitted through Woodside Chemists in order to financially enrich the Defendants.

There can be no genuine dispute that Liberty Mutual's fraud claim, involving the submission of fraudulent bills seeking payment for the Fraudulent Compounded Pain Creams, is supported by a plethora of detailed allegations. The Complaint contains over 40 pages of allegations describing the scheme, including detailed allegations regarding: (i) the intentional assembly of combinations of drug ingredients with no proven topical efficacy for the purpose of creating exorbitantly priced compounded pain cream products; (ii) the engaging in illegal bulk compounding and exclusive dispensing of the compounded pain cream products in set formulations without tailoring the compounded products to the individual needs of any particular

10

patient; and (iii) the entering into of collusive arrangements with the Prescribing Defendants in in furtherance of the submission of fraudulent billing to Liberty Mutual without regard to legitimate patient care. See Docket No. 1, passim. The Complaint also repeatedly alleges that the Prescribing Defendants issued the prescriptions knowing that the creams had no medical efficacy. See e.g., Docket No. 1 ¶ 138-144.

Liberty Mutual's allegations regarding the collusive arrangements between the Pharmacy Defendants and the Prescribing Defendants involving compounding, by themselves, establish violations of Education Law §§ 6530(38) and 6811(7).  These provisions prohibit physicians, pharmacies, and others from entering into arrangements or agreements for the compounding and/or dispensing of coded or specially marked prescriptions. See Docket No. 1, ¶38.

The Pharmacy Defendants, ignoring both the law and the vast majority of the allegations in the Complaint, instead isolate the kickback allegations and incorrectly assert that the Complaint should be dismissed.  When read in context, the kickbacks allegations are more than sufficiently pled -- and supported by *numerous detailed facts*, demonstrating that the Pharmacy Defendants acted in collusion with the Prescribing Defendants in obtaining the Fraudulent Compounded Pain Creams and that, but for the payments of kickbacks from Woodside Chemists, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, ¶¶ 134-144 and passim. These detailed allegations include, among other things, that:

a.    The Pharmacy Defendants intentionally created the exorbitantly priced compounded pain creams knowing that the pain creams had no medical efficacy (see Docket No. 1, ¶¶ 103-126);

b.    The Pharmacy Defendants marketed the pain creams to the Prescribing Defendants using a "set list" of predetermined compounds (see Docket No. 1, ¶¶ 68-73);

c.    The Pharmacy Defendants distributed rubber prescription-stamps that the Prescribing Defendants used to prescribe the "set list" of predetermined compounds (see Docket No. 1, ¶¶ 73-82);

d.    The Prescribing Defendants, knowing that the pain creams had no medical efficacy, used the rubber stamps to issue the prescriptions, rather than writing out a prescription for what was supposed to be a specially tailored, patient-specific prescription (see Docket No. 1, ¶¶ 138-144);

e.    The Prescribing Defendants, knowing that the pain creams had no medical efficacy, signed boilerplate or blank letters of medical necessity (see Docket No. 1, ¶¶ 89-90);

f.    The Prescribing Defendants, knowing that the pain creams had no medical necessity, often prescribed multiple refills on the initial prescriptions without first recommending that the patients try over-the-counter, FDA-approved topical medications and without documenting their examination reports about the need for the compounded pain cream, whether the patient used the compounded cream, or whether the patient obtained any benefit from the compounded pain cream (see Docket No. 1, ¶¶ 138-144);

g.    The Prescribing Defendants did not give the prescriptions to the patients directly to fill and did not give the patients the option of using a pharmacy of their own choosing (see Docket No. 1, ¶¶ 126, 140-143);

h.    The Prescribing Defendants bypassed the patients entirely and sent the rubber-stamped prescriptions directly to Woodside Chemists to dispense them (see Docket No. 1, ¶¶ 140-143); and

i.      But for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams, which were not tailored to meet a unique need of a particular patient, in large quantities (see Docket No. 1 ¶144).

In the context of the fraudulent scheme pled by Liberty Mutual regarding the Pharmacy Defendants, the Prescribing Defendants, and the patients, it is more than reasonable to infer that, but for the payment of kickbacks, the Prescribing Defendants had no legitimate reason to prescribe the Fraudulent Compounded Pain Creams.  While Liberty Mutual will need discovery to identify the particular amounts of the kickbacks, Liberty Mutual's Complaint pleads "enough facts to state a claim for relief that is plausible on its face" under Twombly.  The Complaint also plainly lets the Defendants know – in connection with the particular prescriptions, the particular Fraudulent Compounded Pain Creams, and the particular 77 claim-specific bills set forth in the chart annexed to the Complaint – which parties, which prescriptions and during which time period the kickbacks were paid.

Liberty Mutual's allegations are similar to kickback allegations that are part of No-Fault fraud schemes that courts within this District have deemed sufficient to survive a motion to dismiss. See, e.g., Grafman, 655 F. Supp. 2d 212.  See also CPT Med. Servs., P.C., et al., 2008 U.S. Dist. LEXIS 71156 at * 12 ("the motive shared by all defendants was to induce State Farm to pay claims that were otherwise not reimbursable, and for their efforts they received payments, either directly from State Farm, or indirectly as kickbacks disguised as "management fees.").  In other cases, it has been held that "[a]llegations regarding RICO kickback schemes need only identify the parties and the general time during which the kickbacks were paid, such that the defendant can understand and respond to the allegations." Mason Tenders Dist. Council Pension

13

Fund v. Messera, 1996 U.S. Dist. LEXIS 8929 (S.D.N.Y 1996) at *22-23, citing Panio v. Beverly Enters., 86 Civ. 6422 (KMW), 190 U.S. Dist. LEXIS 3688 (S.D.N.Y 1990)).

Moreover, courts within this District have found similar kickback allegations in No-Fault fraud cases to be sufficient for granting motions to compel disclosure of financial records and motions for default judgment. See, e.g., Liberty Insurance Corporation v. Mohuchy, Dkt. No. 1:14-cv-02168-SJ-JO, at ECF No. 128, pp. 18-24 (E.D.N.Y. 2014) (compelling disclosure of personal financial records in case involving allegations of impermissible kickbacks)[3]; Gov't Emples. Ins. Co. v. Vill. Med. Supply, Inc., 2014 U.S. Dist. LEXIS 37764, at *17 (E.D.N.Y. Feb. 28, 2014) (granting plaintiff-insurer's motion for default judgment on similar kickback allegations, including claims for common law fraud, unjust enrichment, and aiding and abetting); Gov't Emples. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc., 2013 U.S. Dist. LEXIS 135888, at *21 (E.D.N.Y. July 12, 2013) (same); Gov't Emples. Ins. Co. v. IAV Med. Supply, 2013 U.S. Dist. LEXIS 28609, at *16 (E.D.N.Y. Feb. 8, 2013) (same).

In the context of the fraud scheme at issue, it is unreasonable to demand that Liberty Mutual plead more details regarding the kickbacks, including the particular amount of the kickback paid or the precise date that the kickback was paid. Liberty Mutual has more than sufficiently pled facts implicating the Defendants in a collusive, kickback arrangement, prior to obtaining the necessary discovery to uncover facts that are obviously intended to be concealed by the Defendants. Where, as here, information indicating fraud is peculiarly within the possession of the defendants, the pleading party must state the facts upon which the belief of a fraudulent scheme is founded, but need not prove fraud at the pleading stage. See United States ex rel. Chorches v. Am. Med. Response, Inc., 865 F.3d 71, 86 (2d Cir. 2017) (a complaint can satisfy the heightened pleading requirements of Rule 9(b) by making "plausible allegations creating a

---

[3] Annexed hereto at Appendix "A".

strong inference" that fraud was committed where additional information regarding the fraud is "peculiarly within the opposing party's knowledge."); see also Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990); Wilson v. Toussie, 2003 U.S. Dist. LEXIS 23756, at *10 (E.D.N.Y. Oct. 8, 2003).

The cases relied upon by the Pharmacy Defendants are readily distinguishable. Farberware, Inc. v. Groben, 764 F. Supp. 296, 303 (S.D.N.Y. 1991) and JP Morgan Chase Sec. Litig., 365 F. Supp.2d 596 (2005) were both decided long before Twombly and Ashcroft. Moreover, Farberware, JP Morgan Chase and In re Sanofi Sec. Litig., 155 F. Supp. 3d 386 (S.D.N.Y. 2016), bear no resemblance whatsoever to the allegations in the present case. Farberware involved an allegation that a party "and/or" paid kickbacks – leaving it unclear who was alleged to have paid the kickbacks, or whether kickbacks were alleged to be paid.  JP Morgan Chase and Sanofi also both involved the failure to plead fraudulent intent or improper conduct, among other pleading failures. Finally, Gov't Employees Ins. Co. v. MLS Med. Grp. LLC, 2013 U.S. Dist. LEXIS 171983 (D.N.J. Dec. 6, 2013), involved New Jersey law and different facts.

Here, Liberty Mutual's Complaint pleads specific facts regarding the collusive arrangements, and contains specific facts regarding the fraudulent intent of both the Pharmacy Defendants and the Prescribing Defendants that support the kickbacks allegations.  Liberty Mutual alleges all of these facts in the context of a statutory framework that is set up to prohibit collusive arrangements between licensed physicians and pharmacies *involving compounded or specially marked prescriptions*, no doubt because of the concern with kickbacks.  (See Education Law §§ 6530(38) and  6811 (7), the latter of which makes such agreements criminal.) Surely, the totality of the allegations relating to the fraudulent scheme, fraudulent intent, and payment of

kickbacks, is more than sufficient to support all aspects of the fraud claims pled against the Defendants.  To demand more at this stage, hamstrings any plaintiff from ever bringing claims related to a fraudulent scheme involving kickbacks, which by their very nature are intended to be secretive and concealed.

<p style="margin-left:2em">(ii)   <u>The Pharmacy Defendants' Arguments Regarding Pleading Lack of Medical Necessity and Compounding Fraud Fail</u></p>

As set forth above, Liberty Mutual has more than sufficiently alleged facts supporting its claims that the Defendants submitted fraudulent billing in connection with the Fraudulent Compounded Pain Creams.  Liberty Mutual's Complaint contains numerous, detailed paragraphs alleging that the Fraudulent Compounded Pain Creams had no medical efficacy, were prescribed and dispensed repeatedly as first line therapy contrary to evidence-based medical practices, were not medically necessary, and were prescribed and dispensed based on a predetermined treatment protocol, without regard to genuine patient care.  <u>See</u> Docket No. 1, ¶¶ 103-133, and <u>passim</u>. Moreover, the Complaint includes a chart identifying 77 claim-specific bills for the Fraudulent Compounded Pain Creams submitted by Woodside Chemists, identified by the claim number, date of mailing, the billing codes corresponding to the various ingredients, the charges for the ingredients, and the total charge for each prescription for the Fraudulent Compounded Pain Creams.[4] <u>See</u> Docket No. 1, Ex. 1. Liberty Mutual also included numerous examples of the actual prescriptions – including the "prescription stamps" – used by each of the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams to insureds. <u>See</u> Docket No. 1, Ex. 2. Liberty Mutual also included numerous examples of the template "Letters of Medical Necessity" – many of which were blank or incomplete – which were provided by the Pharmacy

---

[4] This chart does not reflect that the Prescribing Defendants routinely include multiple refills of the Fraudulent Compounded Pain Creams in their initial prescriptions – which result in double or triple the total amounts ultimately billed to Liberty Mutual. <u>See</u> Docket No. 1, ¶ 126, and <u>passim</u>.

Defendants to the Prescribing Defendants to attempt to provide a false justification for the medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, Ex. 3.

In CPT Med. Servs., P.C., this Court held that the plaintiff-insurer's amended complaint – which involved RICO allegations of mail fraud – had "more than adequately" satisfied the heightened pleading requirements of Rule 9(b), because it included charts that listed the dates on which the defendants submitted fraudulent claims, sample letters of medical necessity, and sample examination reports. 2008 U.S. Dist. LEXIS 71156, at *39-40 (citations omitted). Similarly, the factual allegations in Liberty Mutual's Complaint, together with the chart identifying 77 claim-specific bills for the Fraudulent Compounded Pain Creams, numerous examples of the actual prescriptions used by each of the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams, and numerous examples of the template "Letters of Medical Necessity" submitted by the Prescribing Defendants to attempt to provide a false justification for the medically unnecessary Fraudulent Compounded Pain Creams – all of which were attached as exhibits to Liberty Mutual's Complaint – are more than sufficient to satisfy the heightened pleading requirements of Rule 9(b) for Liberty Mutual's fraud claim. See also Allstate Ins. Co. v. Rozenberg, 771 F. Supp. 2d 254, 266 (E.D.N.Y. 2011) (charts identifying examples of dates when fraudulent bills were submitted by the defendants were "not necessary to plead a RICO claim based on mail fraud", but "provide[d] an additional layer of particularity that support the sufficiency of the Amended Complaint under Rule 9(b).") (citing 2008 U.S. Dist. LEXIS 71156).

Therefore, Liberty Mutual has provided more than enough information, at the pleading stage, to plausibly state a claim and advise the Pharmacy Defendants of their alleged misconduct. In addition, Liberty Mutual's Complaint, and the exhibits attached thereto, are more than

sufficient to provide the Defendants with notice of the claims at issue in this case. To the extent that the Defendants want even more details, it should be noted that both the Pharmacy Defendants and the Prescribing Defendants are required to maintain patient records and likely already possess all relevant information themselves, since the Insureds are *their patients*. Moreover, additional details will be readily available through discovery, including but not limited to a review of Liberty Mutual's claim files, including the bills, prescriptions, letter of medical necessity, patient examination and treatment reports, and related documentation that was submitted by the Defendants to Liberty Mutual for each claim at issue. The Pharmacy Defendants' request to dismiss the Complaint at this stage, prior to discovery, simply makes no sense.[5]

The Pharmacy Defendants also argue that Liberty Mutual's allegations that the Fraudulent Compounded Pain Creams were prescribed and dispensed in violation of FDA regulations are incorrect.  See Def. Memo at 13. The Pharmacy Defendants' reliance on the relevant federal law and FDA regulations is misplaced. For example, the Pharmacy Defendants cite to 21 U.S.C. § 353a(a)(2) for the proposition that "anticipatory compounding" – compounding of a limited quantity of a produced in advance of a valid prescription – is permitted. However, the Pharmacy Defendants overlook the preceding language in 21 U.S.C. § 353a(a) requiring that the "compounded product is necessary for the identified patient." Id. Therefore, relying on regulatory language permitting anticipatory compounding puts the cart before the horse – if the compound product is not medically necessary, it does not matter

---

[5] To the extent that each Prescribing Defendant is unclear about the precise dollar amount of the damages that are responsible for, this issue will be resolved through discovery, and plaintiffs are not required to specify a precise dollar amount of damages for each Defendant at the pleading stage. See, e.g., Zido v. Werner Enters., 498 F. Supp. 2d 512, 514 (N.D.N.Y. 2006) (finding that the jurisdictional damages amount was satisfied, even though plaintiffs did not specify a precise dollar amount, because the amount sought was in excess of $75,000.00 based on a "fair reading" of the complaint); see also Burr v. Toyota Motor Credit Co., 478 F. Supp. 2d 432, 439 (S.D.N.Y. 2006); James v. Gardner, 2004 U.S. Dist. LEXIS 23174, at *10 (E.D.N.Y. Nov. 10, 2004).

whether the product was compounded before or after the receipt of a valid prescription. As set forth above, the Fraudulent Compounded Pain Creams were not medically necessary, as they had no medical efficacy based on the purported symptoms of the patients receiving the compounded products, were prescribed and administered repeatedly as first line therapy contrary to evidenced-based medical practices, were prescribed without any legitimate reason to provide the patients with expensive compounded products that included drugs whose efficacy in topical form is undocumented and unsupported. See Docket No. 1, ¶ 103. In addition, the Prescribing Defendants generally failed to document any justification whatsoever for the Fraudulent Compounded Pain Products, and submitted blank or incomplete "Letters of Medical Necessity" and examination reports that failed to even mention any compound cream. See Docket No. 1, ¶¶ 78-91, 127-133, Ex. 3.

Moreover, both 21 U.S.C. § 353a and the FDA guidelines cited by the Pharmacy Defendants in their motion (see Def. Memo at pp. 14-15), require anticipatory compounding to be done only in "limited quantities" and for an "identified individual patient". Id. Liberty Mutual's Complaint, however, alleges that Woodside Chemists illegally engaged in bulk compounding by producing and dispensing large quantities of the Fraudulent Compounded Pain Creams in set formulations, without tailoring the medications to the individual needs of any patient. See Complaint at ¶¶ 80, 97. At best, the Pharmacy Defendants have identified a contested issue of fact for trial, not a basis for a motion to dismiss. Accordingly, reciting the relevant federal law and FDA regulations does not mean that Liberty Mutual's allegations are insufficient for purposes of Rule 9(b).

Simply put, the Pharmacy Defendants' arguments that Liberty Mutual's claims fail to satisfy the heightened pleading requirements of Rule 9(b) are belied by the actual allegations in

the Complaint. When read in the light most favorable to Liberty Mutual – and in light of the numerous cases from other courts within this District denying similar motions to dismiss – the Complaint is more than sufficient to state and support Liberty Mutual's claims for common law fraud against the Defendants.

**B.    Liberty Mutual's Unjust Enrichment Claim is Sufficiently Pleaded**

The Pharmacy Defendants argue, in conclusory terms, that Liberty Mutual's claim for unjust enrichment should be dismissed because Liberty Mutual failed to sufficiently plead a claim for unjust enrichment. See Def. Memo at pp. 16-17. The Pharmacy Defendants are wrong.

Unjust enrichment is an equitable principle, "an obligation which the law creates, in the absence of any agreement, when and because acts of the parties or others have placed in the possession of one person money…under such circumstances that in equity and good conscience he ought not to retain it." Rabiner, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) (citation omitted). To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Id. (citing Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). Therefore, if the allegations in Liberty Mutual's Complaint, accepted as true, establish that the Pharmacy Defendants were not entitled to receive payment on the claims they submitted to Liberty Mutual, then Liberty Mutual's unjust enrichment cause of action is sufficient.

As set forth in the Complaint, pursuant to New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101 et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65 et seq.)(collectively, the "No-Fault Laws"), automobile insurers are required to provide No-Fault benefits to Insureds. Pursuant to a duly executed assignment of these benefits, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary goods and medical services provided. See Docket

No. 1, ¶¶ 28-34. The services provided by the Pharmacy Defendants – the Fraudulent Compounded Pain Creams – however, were not medically necessary, because, as alleged in the Complaint, the creams: (i) were not approved by the FDA; (ii) were not created by Woodside Chemists or prescribed by the Prescribing Defendants to meet the unique needs of any individual patient; (iii) were prescribed pursuant to a pre-determined protocol using "prescription stamps"; (iv) had no medical efficacy based on the purported symptoms of the patients receiving the compounded products; (v) were prescribed and administered repeatedly as first line therapy contrary to evidenced-based medical practices; and (iii) were prescribed without any legitimate reason to provide the patients with expensive compounded products – which include drugs whose efficacy in topical form is undocumented and unsupported – when there are many other widely accepted, proven effective alternatives with well documented therapeutic benefits commercially available at considerably lower costs. See Docket No. 1, ¶¶ 103-126, and passim. In addition, Liberty Mutual alleged that Woodside Chemists and the Prescribing Defendants were engaged in collusive kickback arrangements, and that but for the payment of these kickbacks from Woodside Chemists, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, ¶¶ 134-144, and passim.

Accepting all of these allegations as true, and drawing all reasonable inferences in favor of Liberty Mutual (see Vietnam Ass'n for Victims of Agent Orange, 517 F.3d at 115), Liberty Mutual has reimbursed the Pharmacy Defendants for claims to which they were not entitled. The Pharmacy Defendants, thus, plainly were unjustly enriched by the scheme.

Accordingly, Liberty Mutual sufficiently pleaded its claim for unjust enrichment, and the Pharmacy Defendants' motion to dismiss should be denied.

21

C.      **The Pharmacy Defendants' Motion Should be Denied to the Extent That it Seeks Dismissal of Liberty Mutual's Declaratory Judgment Claim in Favor of No-Fault Collections Arbitration**

Lastly, the Pharmacy Defendants argue that this Court should abstain from hearing Liberty Mutual's declaratory judgment claim *if Liberty Mutual's fraud and unjust enrichment claims are dismissed*. The Pharmacy Defendants request for abstention on the declaratory judgment claim – which seeks a declaration to the effect that Woodside Chemists is not entitled to collect on any of their pending, fraudulent billing – is based solely on the fact that Woodside Chemists has commenced arbitration proceedings before the American Arbitration Association and collections lawsuits in state court, which purportedly implicate the same issues as Liberty Mutual's declaratory judgment claim." See Def. Mem., pp. 17-18.

Notably, the Pharmacy Defendants concede that the Wilton/Brillheart abstention doctrine cannot apply when a complaint seeks both damages and declaratory relief. See Def. Memo at 17 (citing Vill. of Westfield v. Welch's, 170 F.3d 116, 124 n.5 (2d Cir. 1999). As Liberty Mutual's Complaint seeks both damages and declaratory relief, the Wilton/Brillheart abstention doctrine cannot apply, and this Court should not abstain from hearing Liberty Mutual's claim for declaratory judgment. Accordingly, as Liberty Mutual's claims for common law fraud and unjust enrichment claims should not be dismissed, for the reasons set forth above, this Court need not even reach the abstention issue put forth by the Defendants.

In any event, there is no basis to support abstention of Liberty Mutual's declaratory judgment claim regardless of what transpires with Liberty Mutual's fraud and unjust enrichment claims. Conspicuously absent from the Defendants' motion are any examples of a court within this District, or anywhere else, abstaining from hearing a declaratory judgment claim in an analogous No-Fault insurance fraud case.

As a threshold matter, the Pharmacy Defendants do not contend that Liberty Mutual's claims for common law fraud or unjust enrichment are subject to arbitration, and there can be no real doubt that Liberty Mutual is entitled – at a minimum – to proceed on those claims in this forum. See, e.g., Allstate Ins. Co. v. Mun, 751 F.3d 94, 99 (2d Cir. 2014)(complex fraud claims are not subject to arbitration under New York's no-fault arbitration scheme). See also, e.g., Liberty Mutual Insurance Company, et al. v. Advanced Medical Diagnostics of Queens, P.C., et al., E.D.N.Y. Docket No. 1:13-cv-03758-ENV-LB, at Docket Entry 32, pp. 21-22 (Vitaliano, J.)(denying motion to dismiss insurer-plaintiffs' declaratory judgment claim in favor of arbitration, and instead staying the defendant-alleged no-fault fraud ring's no-fault collections arbitration pending the disposition of the declaratory judgment claim);[6] Allstate Ins. Co. v. Hisham Elzanaty, 929 F. Supp. 2d 199, 211-213, 216-222 (E.D.N.Y. 2013); Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 262-264 (E.D.N.Y. 2012).

As Judge Spatt observed in the Elzanaty decision:

> It would severely threaten any judgment of this Court to have pending arbitrations or future arbitrations result in inconsistent rulings with regard to Uptown's eligibility for reimbursement of No-Fault insurance payments. The Court is fully aware that piecemeal litigation and inefficiency are at times unavoidable, especially in light of the FAA's strong mandate that contractual arbitration rights be respected. However, if these rights are delayed, rather than effectively terminated, the Court believes that a stay is the most appropriate solution here in order to avoid the large volume of arbitrations and inconsistent judgments that are gradually culminating in a procedural and substantive train wreck.

Id., 929 F. Supp. 2d at 220.  See also Excel Imaging,  879 F. Supp. 2d at 264; Advanced Medical Diagnostics of Queens, P.C., supra (adopting Judge Weinstein's reasoning in Excel Imaging).

The settled case law in this District makes it clear that the Federal rout is the preferred venue for resolving the issues raised by Liberty Mutual's declaratory judgment claim, rather than

---

[6] Annexed hereto at Appendix "A".

requiring the parties to proceed piecemeal through multiple No-Fault arbitration proceedings or individual No-Fault collection lawsuits.

As noted in the cases cited by the Defendants, the Federal District Court may have the discretion to abstain from rendering a declaratory judgment but it should do so only when "the questions in controversy between the parties to the federal suit can be better settled in the proceeding pending in the state court." Travelers Ins. Co., v. Carpenter, 411 F.3d  3323, 338, citing Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).  Here, there is no basis to suggest that the questions at issue in Liberty Mutual's federal action declaratory judgment claim "can be better settled" in either the arbitration collection proceedings pending before the American Arbitration Association or the collection lawsuits pending in various New York state courts.

First, the fraud issues at the center of Liberty Mutual's declaratory judgment are not at issue in either the pending collection arbitration proceedings or the pending collection lawsuits. The collection arbitrations and suits are generally focused on individualized claim issues, such as the medical necessity of an individual treatment or service, and do not implicate the complex fraud issues pled in Liberty Mutual's 46-page complaint.  Second, the collection arbitrations proceedings and the collection lawsuits are pending before numerous, different arbitrators and civil court judges, who do not have the time or resources to address the complex discovery necessary in connection with Liberty Mutual's declaratory judgment claim in this action. Indeed, the expedited nature of the No-Fault arbitration system generally permits little or no discovery, and typically provides for expedited arbitral hearings lasting 15 minutes or less. See, e.g., Mun, supra (observing that "New York's arbitration process for No-Fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible", and that "[d]iscovery is limited or non-existent.")  Further, the risk of multiple, inconsistent rulings in

those proceeding is high, rendering this forum a better choice to resolve the overarching fraud issues related to Liberty Mutual's declaratory judgement claim.

There simply is no basis for the Defendants to assert that the questions in controversy raised by Liberty Mutual's declaratory judgment action can be better settled in the collection arbitration proceedings or collection arbitration lawsuits.  To the contrary, this Court is far better suited to settle and adjudicate the issues presented.

Accordingly, the Defendants' motion should be denied to the extent that it seeks abstention from this Court of Liberty Mutual's declaratory judgment claim.

**III.   To the Extent That the Court Finds a Defect in the Complaint, Liberty Mutual Requests Leave to Replead**

Liberty Mutual believes that its Complaint adequately alleges claims for declaratory judgment, common law fraud, unjust enrichment, and aiding and abetting fraud against the Defendants.  To the extent, however, that the Court finds the Complaint to be inadequate in any manner, Liberty Mutual respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims.  When a party requests leave to amend its complaint, permission generally should be freely granted. Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).  Furthermore, there is no legitimate basis to suggest that such an amendment would be futile or that the Defendants would be prejudiced.  See Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir.1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course").

## CONCLUSION

For the reasons stated herein, the Pharmacy Defendants' motion to dismiss should be denied in its entirety.  In the event that the Court finds an inadequacy in the Complaint, Liberty Mutual should be granted leave to amend.

Respectfully submitted,

RIVKIN RADLER LLP

By:    /s/  Michael Sirignano
      Michael A. Sirignano, Esq. (MS 5263)
      Barry I. Levy, Esq. (BL 2190)
      Priscilla D. Kam, Esq. (PK 1505)
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000
*Counsel for Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company*

3888889