UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE COMPANY,        Docket No.:
LIBERTY INSURANCE CORPORATION, THE FIRST      1:17-cv-06313(ILG)(CLP)
LIBERTY INSURANCE CORPORATION, LM
INSURANCE CORPORATION, LIBERTY MUTUAL
 MID-ATLANTIC INSURANCE COMPANY, LIBERTY
COUNTY MUTUAL INSURANCE COMPANY, LM
PROPERTY and CASUALTY INSURANCE COMPANY,
SAFECO COMPANY OF INDIANA, and AMERICAN
STATES INSURANCE COMPANY,

                              Plaintiffs,

              -against-

WOODSIDE CHEMISTS, INC., RONIKA SONI, LAM C.
QUAN, M.D., LEONID REYFMAN, M.D., LEONID
LITOVSKIY, P.A., ROBERT B. LANTER, D.O., MAXIM
TYORKIN, M.D., PERICLES S. HADJIYANE, M.D.,
TIMOTHY CANTY, M.D., JAMES A. GRIFFIN, P.A.

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - X


### PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO DISMISS AND THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY CERTAIN "PRESCRIBING DEFENDANTS"


                              Respectfully submitted,

                              RIVKIN RADLER LLP
                              926 RXR Plaza
                              Uniondale, New York 11556-0926
                              Telephone:    (516) 357-3000
                              *Counsel for Plaintiffs*


Of Counsel:
Michael A. Sirignano, Esq. (MS 5263)
Barry I. Levy, Esq. (BL 2190)
Priscilla D. Kam, Esq. (PK 1505)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................3

ARGUMENT ................................................................................................................7

I. The Standards on The Motions to Dismiss ........................................................7

II. The Standards on The Motion for Judgment on the Pleadings ..........................8

III. The Prescribing Defendants' Motions to Dismiss or for a Judgment on the
Pleadings Should be Denied in Their Entirety ...................................................8

    A. Liberty Mutual's Claim for Common Law Fraud is Sufficiently Pleaded ...........9

        (i) The Prescribing Defendants' Arguments Regarding
Kickbacks Are a Red-Herring ...............................................................11

        (ii) The Prescribing Defendants' Arguments Regarding Pleading
Lack of Medical Necessity and Compounding Fraud Fail .......................17

    B. Liberty Mutual's Aiding and Abetting a Fraud Claim is
Sufficiently Pleaded .............................................................................................20

    C. Liberty Mutual's Unjust Enrichment Claim is Sufficiently Pleaded ...................22

IV. To the Extent That the Court Finds a Defect in the Complaint, Liberty Mutual
Requests Leave to Replead ...............................................................................25

CONCLUSION ............................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
  2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005).......................................11

Allstate Ins. Co. v Etienne,
  2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. Oct. 22, 2010)....................................22

Allstate Ins. Co. v. Halima,
  2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009)..................................................11

Allstate Ins. Co. v. Rozenberg,
  771 F. Supp. 2d 254 (E.D.N.Y. 2011) ...............................................................18

Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,
  2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009)..................................................10

Anderson News, L.L.C. v. Am. Media, Inc.,
  680 F.3d 162 (2d Cir. 2012)...............................................................................26

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ...............................................................................7, 16

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)..............................................................................7, 10, 14, 16

Blue Cross of Cent. N.Y. v. Wheeler,
  93 A.D.2d 995 (4th Dept. 1983) ........................................................................25

Burnette v. Carothers,
  192 F.3d 52 (2d Cir.1999)...................................................................................8

United States ex rel. Chorches v. Am. Med. Response, Inc.,
  865 F.3d 71 (2d Cir. 2017).................................................................................16

Cleveland v. Caplaw Enters.,
  448 F.3d 518 (2d Cir. 2006)............................................................................3, 7

Daniel v. Long Is. Housing Partnership, Inc.,
  2009 WL 702209 (E.D.N.Y. March 13, 2009) ......................................................7

Farberware, Inc. v. Groben,
  764 F. Supp. 296 (S.D.N.Y. 1991) .....................................................................16

Firestone v. Miroth Const. Co.,
   215 A.D. 564, 214 N.Y.S. 239 (1st Dep't 1926) .....................................................23

FragranceNet.com, Inc. v. FragranceX.com, Inc.,
   679 F. Supp. 2d 312 (E.D.N.Y. 2010) ....................................................................8

Globaltex Group, Ltd. v. Trends Sportswear, Ltd.,
   2009 WL 1270002 (E.D.N.Y. 2009) .......................................................................8

Gov't Emples. Ins. Co. v. Alrof, Inc.,
   2013 U.S. Dist. LEXIS 135880 (E.D.N.Y. July 19, 2013) ....................................21

Gov't Emples. Ins. Co. v. IAV Med. Supply,
   2013 U.S. Dist. LEXIS 28609 (E.D.N.Y. Feb. 8, 2013) ........................................15

Gov't Emples. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.,
   2013 U.S. Dist. LEXIS 135888 (E.D.N.Y. July 12, 2013) ....................................15

Gov't Emples. Ins. Co. v. Uptown Health Care Mgmt.,
   945 F. Supp. 2d 284 (E.D.N.Y 2013) ....................................................................22

Gov't Emples. Ins. Co. v. Vill. Med. Supply, Inc.,
   2014 U.S. Dist. LEXIS 37764 (E.D.N.Y. Feb. 28, 2014) ......................................15

Gov't Employees Ins. Co. v. MLS Med. Grp. LLC,
   2013 U.S. Dist. LEXIS 171983 (D.N.J. Dec. 6, 2013) ..........................................16

James v. Gardner,
   2004 U.S. Dist. LEXIS 23174 (E.D.N.Y. Nov. 10, 2004) ....................................19

Jermyn v. Best Buy Stores, L.P.,
   256 F.R.D. 418 (S.D.N.Y. 2009) ...........................................................................23

JP Morgan Chase Sec. Litig.,
   365 F. Supp.2d 596 (2005) .....................................................................................16

Kaye v. Grossman,
   202 F.3d 611 (2d Cir. 2000)....................................................................................22

Krys v. Butt,
   486 F. App'x 153 (2d Cir. 2012) ............................................................................20

Lerner v. Fleet Bank, N.A.,
   459 F.3d 273 (2d Cir. 2006)....................................................................................20

Liberty Insurance Corporation v. Mohuchy,
   E.D.N.Y. Dkt. No. 1:14-cv-02168-SJ-JO ..............................................................15

Mason Tenders Dist. Council Pension Fund v. Messera,
      1996 U.S. Dist. LEXIS 8929 (S.D.N.Y 1996) ........................................................15

Nakamura v. Fujii,
      253 A.D.2d 387 (1st Dept. 1998) ........................................................................25

Oliver Schools, Inc. v. Foley,
      930 F.2d 248 (2d Cir.1991)..................................................................................26

Patel v. Searles,
      305 F.3d 130 (2d Cir. 2002).................................................................................8

Petrucelli v. Hasty,
      605 F. Supp. 2d 410 (E.D.N.Y. 2009) ................................................................7

In re Sanofi Sec. Litig.,
      155 F. Supp. 3d 386 (S.D.N.Y. 2016)..................................................................16

Sharkey v. Quarantillo,
      541 F.3d 75 (2d Cir. 2008)...................................................................................7

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., et al.,
      2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008)...................................11, 14, 18

State Farm Mut. Auto. Ins. Co. v. Grafman,
      655 F. Supp. 2d 212 (E.D.N.Y. 2009) ...................................................10, 14, 22

State Farm Mut. Auto. Ins. Co. v. Rabiner,
      2010 U.S. Dist. LEXIS 119961 (E.D.N.Y. 2010)...........................................10, 23

Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,
      517 F.3d 104 (2d Cir. 2008)...................................................................3, 7, 22

Wexner v. First Manhattan Co.,
      902 F.2d 169 (2d Cir. 1990).................................................................................16

Wilson v. Toussie,
      2003 U.S. Dist. LEXIS 23756 (E.D.N.Y. Oct. 8, 2003)......................................16

Zido v. Werner Enters.,
      498 F. Supp. 2d 512 (N.D.N.Y. 2006) .................................................................19

**Statutes**

Education Law §§ 6530(38) and 6811(7) ................................................................12, 17

N.Y. Ins. Law §§ 5101 et seq. (New York's Comprehensive Motor Vehicle
      Insurance Reparations Act).........................................................................23

11 N.Y.C.R.R. §§ 65 et seq. ("No-Fault Laws") ..........................................................................23

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 3, 7, 8

Fed. R. Civ. P. 12(c) ...............................................................................................1, 3, 8

Fed. R. Civ. P. 15(a) ..............................................................................................25

Fed. R. Civ. P. 9(b) ........................................................................................ *passim*

## PRELIMINARY STATEMENT

Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company (collectively, "Plaintiffs" or "Liberty Mutual") respectfully submit this memorandum of law as part of its consolidated opposition to three motions filed by certain defendants (collectively referred to as the "Prescribing Defendants"), as follows:

(1) Motion by Defendant, Pericles S. Hadjiyane, M.D. ("Hadjiyane") to dismiss the claims in Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6);

(2) Motion by Defendant, Robert B. Lanter, D.O. ("Lanter") to dismiss the claims in Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6); and

(3) Motion by Defendants, Maxim Tyorkin, M.D. ("Tyorkin"), Timothy Canty, M.D. ("Canty"), and James A. Griffin, P.A. ("Griffin") for a judgment on the pleadings dismissing Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(c).

Each of these Prescribing Defendants (Hadjiyane, Lanter, Tyorkin, Canty, and Griffin) raise the same exact arguments and, indeed, their motions are virtually word-for-word identical.  For these reasons, and in an effort to minimize the burden on the Court, Liberty Mutual submits a single, consolidated opposition to the two motions to dismiss and the one motion for judgment on the pleadings.

Whether denominated as a motion to dismiss or a motion for judgment on the pleadings, the Prescribing Defendants' motions fail.  Liberty Mutual commenced this action to terminate a fraudulent scheme involving the submission of fraudulent "No-Fault" insurance charges for

medically unnecessary, illusory, and formulaic compounded "pain creams," which were intentionally created, prescribed, and dispensed in large quantities without tailoring the medications to the individual needs of any patient, all in violation of regulatory and licensing requirements.  The Prescribing Defendants, ignoring both the detailed allegations in Liberty Mutual's Complaint and the overwhelming precedent in the Second Circuit, cherry-pick and mischaracterize various allegations in the Complaint in a frivolous attempt to dismiss Liberty Mutual's fraud, unjust enrichment, and aiding and abetting claims.  The Prescribing Defendants' proposed grounds for dismissal are – with some slight and entirely cosmetic variations – the same arguments that time and again have been raised, and rejected, by virtually every court in this District to consider them.

Liberty Mutual's Complaint supports its claims for relief with over 40 pages of specific, detailed factual allegations regarding the fraud scheme that easily allow the Court and the parties to reasonably infer (if not conclude definitively) that the Defendants are liable for the submission of the fraudulent billing. The Prescribing Defendants' assertion of various technical points are counterintuitive on their face and do not withstand any serious scrutiny. In sum, the Prescribing Defendants' arguments for the dismissal of Plaintiffs' common law fraud, aiding and abetting fraud, and unjust enrichment claims are meritless and completely at odds with well-settled authority of this Court.

Accordingly, the Prescribing Defendants' motions should be denied.

## STATEMENT OF FACTS[1]

Liberty Mutual has pleaded the Defendants' fraudulent scheme in sufficient detail within the body of the Complaint. See Docket No. 1, passim. Liberty Mutual respectfully refers the Court to the Complaint for the full contours of the Defendants' scheme, inasmuch as it is impossible to fully describe every aspect of the Defendants' fraudulent conduct in a relatively short memorandum of law. Briefly, however, and as described more fully in the Complaint:

(i)   Woodside Chemists purports to be a neighborhood pharmacy, but is illegally engaged in bulk "compounding," exclusively dispensing large quantities of the Fraudulent Compounded Pain Creams in set formulations, without tailoring the medications to the individual needs of any patient. The Fraudulent Compounded Pain Creams are not approved by the FDA, yet Woodside Chemists intentionally assembled a combination of drug ingredients with unproven topical effects for the sole purpose of creating exorbitantly priced pain cream products - for which it billed New York State automobile insurers approximately $2,000.00 to in excess of $6,000.00 for a single tube.  The Pharmacy Defendants engaged in this scheme knowing that there were a wide range of commercially available, FDA-approved medications with proven therapeutic effects available at a fraction of the cost that could have been dispensed to the patients. See Docket No. 1, ¶ 2, and passim.

(ii)   To implement their fraudulent scheme, Woodside Chemists and Soni – its alleged owner – entered into illegal, collusive arrangements involving the payment of unlawful kickbacks to licensed physicians and/or their associates working at various multidisciplinary medical "clinics" that treat patients with No-Fault insurance benefits (the "No-Fault Clinics"), in order to generate unnecessary prescriptions for the Fraudulent Compounded Pain Creams. The Fraudulent Compounded Pain Creams were produced by Woodside Chemists in large quantities, were not medically necessary, and were dispensed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly received them. See Docket No. 1, ¶ 3, and passim.

(iii)   Compounded drug products are only appropriate in limited circumstances, should be formulated for an individual patient's needs, and should not be prescribed and dispensed as a matter of course. The Pharmacy Defendants, however, blatantly exploited the No-Fault insurance reimbursement system by entering into collusive relationships with healthcare professionals (the "Prescribing Defendants") to

---

[1] As the Defendants move to dismiss pursuant to Rule 12(b)(6) and 12(c) this statement of facts is derived entirely from the Complaint and matters of which the Court may take judicial notice. Accordingly, the facts set forth herein should be accepted as true for purposes of this motion. See, e.g. Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted); see also Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

ensure that the Fraudulent Compounded Pain Creams were dispensed again and again to numerous Insureds involved in minor fender-bender type accidents, generating hundreds of thousands of dollars in fraudulent billing to insurers. See Docket No. 1, ¶¶ 68-69, and passim.

(iv)     As part of the collusive arrangement with the Prescribing Defendants, the Pharmacy Defendants produced and distributed "prescription stamps," bearing the names, ingredients, and concentrations of the predetermined and formulaic compounded products, which stamps the Prescribing Defendants then used to stamp their official New York State prescription pads to prescribe the Fraudulent Compounded Creams. Through the use of the specially stamped and marked prescriptions, the Pharmacy Defendants steered the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams as part of a predetermined treatment, billing and kickback scheme. See Docket No. 1, ¶¶ 73-82, and passim.

(v)      In addition to the "prescription stamps," the Pharmacy Defendants gave the Prescribing Defendants pre-printed "Letter of Medical Necessity" forms for the Prescribing Defendants to submit to insurers to attempt to justify the compounded drug products as medically necessary. The "Letter of Medical Necessity" forms were actually pre-printed, boilerplate, and often left blank. Through the use of the pre-printed, boilerplate Letters of Medical Necessity, the Pharmacy Defendants steered the Prescribing Defendants to attest to the purported medical necessity of the Fraudulent Compounded Pain Creams and conceal that the prescription and dispensation of the compounded drug products was part of a predetermined treatment, billing and kickback scheme. See Docket No. 1, ¶¶ 83-94, and passim.

(vi)     In keeping with the fact that the Fraudulent Compounded Creams were prescribed pursuant to the Defendants' fraudulent scheme intended to generate profits from insurers, Woodside Chemists' Fraudulent Compounded Pain Creams (i) had no medical efficacy based on the purported symptoms of the patients receiving the compounded products; (ii) were prescribed and administered repeatedly as first line therapy contrary to evidenced-based medical practices; and (iii) were prescribed without any legitimate reason to provide the patients with unproven topical creams, when there are many other widely accepted, proven effective alternatives with well documented therapeutic benefits commercially available at considerably lower costs. Moreover, the Prescribing Defendants routinely include multiple refills of the Fraudulent Compounded Pain Creams in their initial prescriptions - often doubling or tripling the total amounts ultimately billed to Liberty Mutual - without regard for whether the Fraudulent Compounded Pain Creams actually provided any therapeutic relief to the Insureds. See Docket No. 1, ¶¶ 103-126, and passim.

(vii)    As part of the predetermined protocol, the Prescribing Defendants produced examination reports that were generic, preprinted, and boilerplate, designed to justify continuing, voluminous and excessive healthcare services that the No-Fault Clinic providers purported to render to Insureds thereafter - including the

4

prescription of Fraudulent Compounded Pain Creams. Notably, many of the Prescribing Defendants' initial examination reports and follow-up examination reports made no mention whatsoever of the specific Fraudulent Compounded Pain Creams the Insureds were prescribed. <u>See</u> Docket No. 1, ¶¶ 127-133, and <u>passim</u>.

(viii)  In furtherance of the fraudulent scheme, the Pharmacy Defendants participated in illegal, collusive arrangements in which the Prescribing Defendants (along with the other prescribing providers) prescribed the medically unnecessary Fraudulent Compounded Pain Creams in exchange for unlawful kickbacks paid by the Pharmacy Defendants. In exchange for kickbacks, the Prescribing Defendants intentionally prescribed, or purported to prescribe, the Fraudulent Compounded Pain Creams to patients of the No-Fault Clinics -- knowing that they were not medically necessary -- pursuant to the fraudulent predetermined treatment, billing and kickback protocol, without regard to genuine patient care, without regard to pharmacologic outcomes, and without regard to cost and attention to fiscal responsibility. But for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams, which were not individually tailored to meet a unique need of a particular patient, in large quantities. <u>See</u> Docket No. 1, ¶¶ 134-144, and <u>passim</u>.

As the Court may note, the allegations regarding Woodside Chemists' submission of fraudulent bills to Liberty Mutual – and the actions taken by the Prescribing Defendants that aided and abetted the Pharmacy Defendants – are not made in a vacuum. Rather, they are supported by considerable factual detail, even at the pleading stage and in advance of discovery. For example, the Complaint sets forth: (i) detailed facts regarding the specially marked, "set formulations" of Fraudulent Compounded Pain Creams marketed and dispensed by the Pharmacy Defendants; (ii) detailed facts regarding how the Fraudulent Compounded Pain Creams were not medically necessary and were intentionally prescribed by the Prescribing Defendants and dispensed by the Pharmacy Defendants without regard to genuine patient care (iii) detailed facts regarding the "prescription stamps" and "Letters of Medical Necessity" produced and distributed by the Pharmacy Defendants to the Prescribing Defendants to facilitate prescriptions for the Fraudulent Compounded Pain Creams and steer the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams; (iv) detailed facts regarding how the

Prescribing Defendants intentionally prescribed Woodside Chemists' compounded creams contrary to evidenced-based medical practices; and (v) detailed facts demonstrating that but for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams, which were not individually tailored to meet a unique need of a particular patient. See Docket No. 1, passim.

In further support of Liberty Mutual's allegations, Liberty Mutual included a chart identifying 77 claim-specific bills for the Fraudulent Compounded Pain Creams, identified by the claim number, date of mailing, the billing codes corresponding to the various ingredients, the charges for the ingredients, and the total charge for each prescription for the Fraudulent Compounded Pain Creams. See Docket No. 1, Ex. 1. Liberty Mutual also included numerous examples of the actual prescriptions – including the "prescription stamps" – used by each of the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams to Insureds. See Docket No. 1, Ex. 2. Liberty Mutual also included numerous examples of the template "Letters of Medical Necessity" – many of which were blank or incomplete – which were allegedly signed by the Prescribing Defendants to attempt to provide a false justification for the medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, Ex. 3.

Based on these allegations, among others, Liberty Mutual asserts common law fraud, aiding and abetting fraud, and unjust enrichment claims against the Defendants, through which it seeks to recover the more than $20,500.00 it paid in reliance on the fraudulent billing. See Docket No. 1, ¶¶ 178-191. In addition, Liberty Mutual seeks a declaratory judgment to the effect that it is not liable to pay any of Woodside Chemists' pending, fraudulent billing that was

generated based on the prescriptions, which is alleged to be in excess of $222,400.00. See Docket No. 1, ¶¶ 167-170.

## ARGUMENT

### I.    The Standards on The Motions to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal only is appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face. Sharkey v. Quarantillo, 541 F.3d 75, 92 (2d Cir. 2008). Thus, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "plausibility" requirement does not mandate a universal standard of heightened fact pleading. Petrucelli v. Hasty, 605 F. Supp. 2d 410, 417 (E.D.N.Y. 2009); see also Daniel v. Long Is. Housing Partnership, Inc., 2009 WL 702209, * 4 (E.D.N.Y., March 13, 2009)("The Court does not, therefore, require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face")(internal quotation and citation omitted). More recently, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, noting that "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104, 115 (2d Cir. 2008) (internal citation omitted); see also Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is

legally sufficient." FragranceNet.com, Inc. v. FragranceX.com, Inc., 679 F. Supp. 2d 312, 324 (E.D.N.Y. 2010)(internal quotations and citations omitted); see also Globaltex Group, Ltd. v. Trends Sportswear, Ltd., 2009 WL 1270002, * 4 (E.D.N.Y. 2009)("In reviewing a Rule 12(b)(6) motion, the task of the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence...").

## II.   The Standards on The Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed using the same standard as that applicable to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), accepting all allegations in Liberty Mutual's complaint as true and drawing all reasonable inferences in favor of Liberty Mutual. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.1999). The complaint should only be dismissed under Rule 12(c) if it appears beyond doubt that Liberty Mutual can prove no facts in support of its claims that would entitle Liberty Mutual to the relief sought. See Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002).

## III.   The Prescribing Defendants' Motions to Dismiss or for a Judgment on the Pleadings Should be Denied in Their Entirety

Distilled to their essence, the Prescribing Defendants' arguments for dismissal of the claims in Liberty Mutual's Complaint amount to the following:

(i)     a contention that Liberty Mutual's common law fraud claim fails to satisfy the requirements of Rule 9(b), because Liberty Mutual failed to state specific facts in support of its allegations that Woodside Chemists and the Prescribing Defendants engaged in collusive kickback arrangements and/or in support of its allegations that the Fraudulent Compounded Pain Creams were not medically necessary and were prescribed without regard for medical necessity;

(ii)    a contention that Liberty Mutual's claim for aiding and abetting fraud is insufficiently pleaded; and

(iii)   a contention that Liberty Mutual's claim for unjust enrichment is insufficiently pleaded.

As discussed below, none of these arguments has any merit, and the Prescribing Defendants' motions to dismiss or for a judgment on the pleadings should be denied in their entirety.

**A.     Liberty Mutual's Claim for Common Law Fraud is Sufficiently Pleaded**

The Prescribing Defendants argue that Liberty Mutual's claim for common law fraud should be dismissed because Liberty Mutual failed to set forth sufficient facts in support of its claims. See Hadjiyane Memo. at pp. 6-11; see Lanter Memo. at pp. 6-10; see Tyorkin, Canty, and Griffin Memo. at pp. 6-10. The Prescribing Defendants are wrong.

Throughout the Complaint, Liberty Mutual set forth detailed facts which support its contention that the Defendants submitted fraudulent bills seeking payment for the Fraudulent Compounded Pain Creams, including that: (i) the Pharmacy Defendants intentionally assembled combinations of expensive drug ingredients without regard to the efficacy of the combinations; (ii) the Fraudulent Compounded Pain Creams were intentionally prescribed by the Prescribing Defendants and dispensed by the Pharmacy Defendants without regard to genuine patient care; (iii) the "prescription stamps" and "Letters of Medical Necessity" were produced and distributed by the Pharmacy Defendants to the Prescribing Defendants to steer the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams; (iv) the prescription and dispensation of the compounded creams was contrary to evidenced-based medical practices; and (v) the Pharmacy Defendants and Prescribing Defendants engaged in a collusive relationship with virtually no involvement by, or consideration of, the patients; and (vi) but for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, passim. These allegations, accepted as true, are more than sufficient for Liberty Mutual's claim for common law fraud to survive a motion to dismiss.

Though the Prescribing Defendants spill considerable ink urging the Court to apply the standard set forth in Twombly and its progeny so as to dismiss Liberty Mutual's claims, their request is predicated on a misapplication of the Twombly-Iqbal standard, and a failure to acknowledge Liberty Mutual's extensive range of factual allegations supporting its claims. The Prescribing Defendants also deploy a familiar tactic in seeking dismissal of Liberty Mutual's claims – namely, they state highly generalized rules of fraud and pleading, but ignore the more specific precedent that has been developed by this and other Courts within the Second Circuit when dealing with fraudulent No-Fault schemes. See Hadjiyane Memo. at pp. 4-12; see Lanter Memo. at pp. 4-11; see Tyorkin, Canty, and Griffin Memo. at pp. 5-10. Then, the Prescribing Defendants cherry-pick and mischaracterize certain allegations in the Complaint, arguing that Liberty Mutual has not met the more generalized pleading standard with respect to Rule 9(b). The Prescribing Defendants' arguments are without merit.

This Court repeatedly has held that similar allegations – that a group of defendants knowingly misrepresented that they were eligible to collect No-Fault benefits, when in fact they were not, because they were illegally incorporated, provided medically unnecessary services, or paid kickbacks – are sufficient for purposes of Rule 9(b). See, e.g., State Farm Mut. Auto. Ins. Co. v. Rabiner, 2010 U.S. Dist. LEXIS 119961 (E.D.N.Y. 2010) (denying motion to dismiss common law fraud and unjust enrichment claims based on allegations of fraudulent incorporation); State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212 (E.D.N.Y. 2009)(denying motions to dismiss RICO, common law fraud, and unjust enrichment claims predicated on allegations of fraudulent licensure and medically unnecessary services, and kickbacks); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009) (denying motions to dismiss RICO, common law fraud, and unjust

enrichment claims predicated on allegations of fraudulent licensure and medically unnecessary services); <u>Allstate Ins. Co. v. Halima</u>, 2009 U.S. Dist. LEXIS 22443, *6 (E.D.N.Y. 2009) (same); <u>State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., et al.</u>, 2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008) (Glasser, J.) (denying motions to dismiss RICO, common law fraud, and unjust enrichment claims predicated on allegations of fraudulent licensure, medically unnecessary services, and kickbacks); <u>State Farm Mut. Auto. Ins. Co. v. James M. Liguori</u>, M.D., P.C., 589 F. Supp. 2d 221, 238 (E.D.N.Y. 2008); <u>AIU Ins. Co. v. Olmecs Med. Supply, Inc.</u>, 2005 U.S. Dist. LEXIS 29666, at *40 (E.D.N.Y. Feb. 22, 2005) (denying motion to dismiss fraud and unjust enrichment claims predicated on medically unnecessary and cost-inflated medical equipment).

These cases are conspicuously absent from the Prescribing Defendants' motions to dismiss.

(i)    <u>The Prescribing Defendants' Arguments<br>Regarding Kickbacks Are a Red-Herring</u>

Instead of addressing the governing case law in the Second Circuit, the Defendants make a frivolous attempt to defeat Liberty Mutual's fraud claim by deliberately attacking a limited portion of the Complaint's allegations regarding kickbacks. This effort to recast the Complaint as premised solely on kickbacks is a red-herring because the Complaint as a whole makes clear that the Defendants' scheme to submit fraudulent bills for the Fraudulent Compounded Pain Creams is, in fact, a scheme involving multiple false and fraudulent statements and misrepresentations, all calculated to induce Liberty Mutual to pay the bills submitted through Woodside Chemists in order to financially enrich the Defendants.

There can be no genuine dispute that Liberty Mutual's fraud claim, involving the submission of fraudulent bills seeking payment for the Fraudulent Compounded Pain Creams, is supported by a plethora of detailed allegations. The Complaint contains over 40 pages of

11

allegations describing the scheme, including detailed allegations regarding: (i) the intentional assembly of combinations of drug ingredients with no proven topical efficacy for the purpose of creating exorbitantly priced compounded pain cream products; (ii) the engaging in illegal bulk compounding and exclusive dispensing of the compounded pain cream products in set formulations without tailoring the compounded products to the individual needs of any particular patient; and (iii) the entering into of collusive arrangements with the Prescribing Defendants in in furtherance of the submission of fraudulent billing to Liberty Mutual without regard to legitimate patient care. See Docket No. 1, passim. The Complaint also repeatedly alleges that the Prescribing Defendants issued the prescriptions knowing that the creams had no medical efficacy. See e.g., Docket No. 1 ¶ 138-144.

Liberty Mutual's allegations regarding the collusive arrangements between the Pharmacy Defendants and the Prescribing Defendants involving compounding, by themselves, establish violations of Education Law § 6530(38) and 6811(7). These provisions prohibit physicians, pharmacies, and others from entering into arrangements or agreements for the compounding and/or dispensing of coded or specially marked prescriptions.  See Docket No. 1, ¶38.

The Defendants, ignoring both the law and the vast majority of the allegations in the Complaint, instead isolate the kickback allegations and incorrectly assert that the Complaint should be dismissed.  When read in context, the kickbacks allegations are more than sufficiently pled -- and supported by *numerous detailed facts*, demonstrating that the Pharmacy Defendants acted in collusion with the Prescribing Defendants in obtaining the Fraudulent Compounded Pain Creams and that, but for the payments of kickbacks from Woodside Chemists, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary

Fraudulent Compounded Pain Creams. <u>See</u> Docket No. 1, ¶¶ 134-144 and <u>passim</u>. These detailed allegations include, among other things, that:

a.      The Pharmacy Defendants intentionally created the exorbitantly priced compounded pain creams knowing that the pain creams had no medical efficacy (<u>see</u> Docket No. 1, ¶¶ 103-126);

b.      The Pharmacy Defendants marketed the pain creams to the Prescribing Defendants using a "set list" of predetermined compounds (<u>see</u> Docket No. 1, ¶¶ 68-73);

c.      The Pharmacy Defendants distributed rubber prescription-stamps that the Prescribing Defendants used to prescribe the "set list" of predetermined compounds (<u>see</u> Docket No. 1, ¶¶ 73-82);

d.      The Prescribing Defendants, knowing that the pain creams had no medical efficacy, used the rubber stamps to issue the prescriptions, rather than writing out a prescription for what was supposed to be a specially tailored, patient-specific prescription (<u>see</u> Docket No. 1, ¶¶ 138-144);

e.      The Prescribing Defendants, knowing that the pain creams had no medical efficacy, signed boilerplate or blank letters of medical necessity (<u>see</u> Docket No. 1, ¶¶ 89-90);

f.      The Prescribing Defendants, knowing that the pain creams had no medical necessity, often prescribed multiple refills on the initial prescriptions without first recommending that the patients try over-the-counter, FDA-approved topical medications and without documenting their examination reports about the need for the compounded pain cream, whether the patient used the compounded cream, or whether the patient obtained any benefit from the compounded pain cream (<u>see</u> Docket No. 1, ¶¶ 138-144);

g.     The Prescribing Defendants did not give the prescriptions to the patients directly to fill and did not give the patients the option of using a pharmacy of their own choosing (see Docket No. 1, ¶¶ 126, 140-143);

h.     The Prescribing Defendants bypassed the patients entirely and sent the rubber-stamped prescriptions directly to Woodside Chemists to dispense them (see Docket No. 1, ¶¶ 140-143); and

i.     But for the payments of kickbacks from the Pharmacy Defendants, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams, which were not tailored to meet a unique need of a particular patient, in large quantities (see Docket No. 1 ¶144).

In the context of the fraudulent scheme pled by Liberty Mutual regarding the Pharmacy Defendants, the Prescribing Defendants, and the patients, it is more than reasonable to infer that, but for the payment of kickbacks, the Prescribing Defendants had no legitimate reason to prescribe the Fraudulent Compounded Pain Creams.  While Liberty Mutual will need discovery to identify the particular amounts of the kickbacks, Liberty Mutual's Complaint pleads "enough facts to state a claim for relief that is plausible on its face" under Twombly.  The Complaint also plainly lets the Defendants know – in connection with the particular prescriptions, the particular Fraudulent Compounded Pain Creams, and the particular 77 claim-specific bills set forth in the chart annexed to the Complaint – which parties, which prescriptions and during which time period the kickbacks were paid.

Liberty Mutual's allegations are similar to kickback allegations that are part of No-Fault fraud schemes that courts within this District have deemed sufficient to survive a motion to dismiss. See, e.g., Grafman, 655 F. Supp. 2d 212.  See also CPT Med. Servs., P.C., et al., 2008

U.S. Dist. LEXIS 71156 at * 12 ("the motive shared by all defendants was to induce State Farm to pay claims that were otherwise not reimbursable, and for their efforts they received payments, either directly from State Farm, or indirectly as kickbacks disguised as "management fees."). In other cases, it has been held that "[a]llegations regarding RICO kickback schemes need only identify the parties and the general time during which the kickbacks were paid, such that the defendant can understand and respond to the allegations." <u>Mason Tenders Dist. Council Pension Fund v. Messera</u>, 1996 U.S. Dist. LEXIS 8929 (S.D.N.Y 1996) at *22-23, citing <u>Panio v. Beverly Enters.</u>, 86 Civ. 6422 (KMW), 190 U.S. Dist. LEXIS 3688 (S.D.N.Y 1990)).

Moreover, courts within this District have found similar kickback allegations in No-Fault fraud cases to be sufficient for granting motions to compel disclosure of financial records and motions for default judgment. <u>See</u>, <u>e.g.</u>, <u>Liberty Insurance Corporation v. Mohuchy</u>, Dkt. No. 1:14-cv-02168, at ECF No. 128, pp. 18-24 (E.D.N.Y. 2014) (compelling disclosure of personal financial records in case involving allegations of impermissible kickbacks)[2]; <u>Gov't Emples. Ins. Co. v. Vill. Med. Supply, Inc.</u>, 2014 U.S. Dist. LEXIS 37764, at *17 (E.D.N.Y. Feb. 28, 2014) (granting plaintiff-insurer's motion for default judgment on similar kickback allegations, including claims for common law fraud, unjust enrichment, and aiding and abetting); <u>Gov't Emples. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.</u>, 2013 U.S. Dist. LEXIS 135888, at *21 (E.D.N.Y. July 12, 2013) (same); <u>Gov't Emples. Ins. Co. v. IAV Med. Supply</u>, 2013 U.S. Dist. LEXIS 28609, at *16 (E.D.N.Y. Feb. 8, 2013) (same).

In the context of the fraud scheme at issue, it is unreasonable to demand that Liberty Mutual plead more details regarding the kickbacks, including the particular amount of the kickback paid or the precise date that the kickback was paid. Liberty Mutual has more than sufficiently pled facts implicating the Defendants in a collusive, kickback arrangement, prior to

---

[2] Annexed hereto at Appendix "A".

obtaining the necessary discovery to uncover facts that are obviously intended to be concealed by the Defendants. Where, as here, information indicating fraud is peculiarly within the possession of the defendants, the pleading party must state the facts upon which the belief of a fraudulent scheme is founded, but need not prove fraud at the pleading stage. See United States ex rel. Chorches v. Am. Med. Response, Inc., 865 F.3d 71, 86 (2d Cir. 2017) (a complaint can satisfy the heightened pleading requirements of Rule 9(b) by making "plausible allegations creating a strong inference" that fraud was committed where additional information regarding the fraud is "peculiarly within the opposing party's knowledge."); see also Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990); Wilson v. Toussie, 2003 U.S. Dist. LEXIS 23756, at *10 (E.D.N.Y. Oct. 8, 2003).

The cases relied upon by the Prescribing Defendants are readily distinguishable. Farberware, Inc. v. Groben, 764 F. Supp. 296, 303 (S.D.N.Y. 1991) and JP Morgan Chase Sec. Litig., 365 F. Supp.2d 596 (2005) were both decided long before Twombly and Ashcroft. Moreover, Farberware, JP Morgan Chase and In re Sanofi Sec. Litig., 155 F. Supp. 3d 386 (S.D.N.Y. 2016), bear no resemblance whatsoever to the allegations in the present case. Farberware involved an allegation that a party "and/or" paid kickbacks – leaving it unclear who was alleged to have paid the kickbacks, or whether kickbacks were alleged to be paid. JP Morgan Chase and Sanofi also both involved the failure to plead fraudulent intent or improper conduct, among other pleading failures. Finally, Gov't Employees Ins. Co. v. MLS Med. Grp. LLC, 2013 U.S. Dist. LEXIS 171983 (D.N.J. Dec. 6, 2013), involved New Jersey law and different facts.

Here, Liberty Mutual's Complaint pleads specific facts regarding the collusive arrangements, and contains specific facts regarding the fraudulent intent of both the Pharmacy

Defendants and the Prescribing Defendants that support the kickbacks allegations.  Liberty Mutual alleges all of these facts in the context of a statutory framework that is set up to prohibit collusive arrangements between licensed physicians and pharmacies *involving compounded or specially marked prescriptions*, no doubt because of the concern with kickbacks.  (<u>See</u> Education Law § 6530(38) and § 6811 (7), the latter of which makes such agreements criminal.) Surely, the totality of the allegations relating to the fraudulent scheme, fraudulent intent, and payment of kickbacks, is more than sufficient to support all aspects of the fraud claims pled against the Defendants.  To demand more at this stage, hamstrings any plaintiff from ever bringing claims related to a fraudulent scheme involving kickbacks, which by their very nature are intended to be secretive and concealed.

      (ii)     <u>The Prescribing Defendants' Arguments Regarding Pleading<br>Lack of Medical Necessity and Compounding Fraud Fail</u>

As set forth above, Liberty Mutual has more than sufficiently alleged facts supporting its claims that the Defendants submitted fraudulent billing in connection with the Fraudulent Compounded Pain Creams.  Liberty Mutual's Complaint contains numerous, detailed paragraphs alleging that the Fraudulent Compounded Pain Creams had no medical efficacy, were prescribed and dispensed repeatedly as first line therapy contrary to evidence-based medical practices, were not medically necessary, and were prescribed and dispensed based on a predetermined treatment protocol, without regard to genuine patient care.  <u>See</u> Docket No. 1, ¶¶ 103-133, and <u>passim</u>.  Moreover, the Complaint includes a chart identifying 77 claim-specific bills for the Fraudulent Compounded Pain Creams submitted by Woodside Chemists, identified by the claim number, date of mailing, the billing codes corresponding to the various ingredients, the charges for the ingredients, and the total charge for each prescription for the Fraudulent Compounded Pain

Creams.[3] See Docket No. 1, Ex. 1. Liberty Mutual also included numerous examples of the actual prescriptions – including the "prescription stamps" – used by each of the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams to insureds. See Docket No. 1, Ex. 2. Liberty Mutual also included numerous examples of the template "Letters of Medical Necessity" – many of which were blank or incomplete – which were provided by the Pharmacy Defendants to the Prescribing Defendants to attempt to provide a false justification for the medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, Ex. 3.

In CPT Med. Servs., P.C., this Court held that the plaintiff-insurer's amended complaint – which involved RICO allegations of mail fraud – had "more than adequately" satisfied the heightened pleading requirements of Rule 9(b) because it included charts that listed the dates on which the defendants submitted fraudulent claims, sample letters of medical necessity, and sample examination reports. 2008 U.S. Dist. LEXIS 71156, at *39-40 (citations omitted). Similarly, the factual allegations in Liberty Mutual's Complaint, together with the chart identifying 77 claim-specific bills for the Fraudulent Compounded Pain Creams, numerous examples of the actual prescriptions used by each of the Prescribing Defendants to prescribe the Fraudulent Compounded Pain Creams, and numerous examples of the template "Letters of Medical Necessity" submitted by the Prescribing Defendants to attempt to provide a false justification for the medically unnecessary Fraudulent Compounded Pain Creams – all of which were attached as exhibits to Liberty Mutual's Complaint – are more than sufficient to satisfy the heightened pleading requirements of Rule 9(b) for Liberty Mutual's fraud claim. See also Allstate Ins. Co. v. Rozenberg, 771 F. Supp. 2d 254, 266 (E.D.N.Y. 2011) (charts identifying examples of dates when fraudulent bills were submitted by the defendants were "not necessary to

---

[3] This chart does not reflect that the Prescribing Defendants routinely include multiple refills of the Fraudulent Compounded Pain Creams in their initial prescriptions – which result in double or triple the total amounts ultimately billed to Liberty Mutual. See Docket No. 1, ¶ 126, and passim.

plead a RICO claim based on mail fraud", but "provide[d] an additional layer of particularity that support the sufficiency of the Amended Complaint under Rule 9(b).") (citing 2008 U.S. Dist. LEXIS 71156).

Therefore, Liberty Mutual has provided more than enough information, at the pleading stage, to plausibly state a claim and advise the Prescribing Defendants of their alleged misconduct.  In addition, Liberty Mutual's Complaint, and the exhibits attached thereto, are more than sufficient to provide the Defendants with notice of the claims at issue in this case. To the extent that the Defendants want even more details, it should be noted that the Prescribing Defendants are required to maintain patient records and likely already possess all relevant information themselves, since the Insureds are *their patients* and they should be able to pull files related to prescriptions *they* sent to Woodside Chemists.  Moreover, additional details will be readily available through discovery, including but not limited to a review of Liberty Mutual's claim files, including the bills, prescriptions, letter of medical necessity, patient examination and treatment reports, and related documentation that was submitted by the Defendants to Liberty Mutual for each claim at issue.  The Prescribing Defendants' request to dismiss the Complaint and Liberty Mutual's claims at this stage, prior to discovery, makes no sense.[4]

Simply put, the Prescribing Defendants' arguments that Liberty Mutual's claims fail to satisfy the heightened pleading requirements of Rule 9(b) are belied by the actual allegations in the Complaint. When read in the light most favorable to Liberty Mutual – and in light of the numerous cases from other courts within this District denying similar motions to dismiss – the

---

[4] To the extent that each Prescribing Defendant is unclear about the precise dollar amount of the damages that are responsible for, this issue will be resolved through discovery, and plaintiffs are not required to specify a precise dollar amount of damages for each Defendant at the pleading stage. See, e.g., Zido v. Werner Enters., 498 F. Supp. 2d 512, 514 (N.D.N.Y. 2006) (finding that the jurisdictional damages amount was satisfied, even though plaintiffs did not specify a precise dollar amount, because the amount sought was in excess of $75,000.00 based on a "fair reading" of the complaint); see also Burr v. Toyota Motor Credit Co., 478 F. Supp. 2d 432, 439 (S.D.N.Y. 2006); James v. Gardner, 2004 U.S. Dist. LEXIS 23174, at *10 (E.D.N.Y. Nov. 10, 2004).

Complaint is more than sufficient to state and support Liberty Mutual's claims for common law fraud against the Defendants.

### B.      Liberty Mutual's Aiding and Abetting a Fraud Claim is Sufficiently Pleaded

The Prescribing Defendants argue, in conclusory terms, that Liberty Mutual's claim for aiding and abetting a fraud should be dismissed because Liberty Mutual failed to sufficiently plead a claim for aiding and abetting a fraud. See Hadjiyane Memo. at pp. 11-13; see Lanter Memo. at pp. 11-12; see Tyorkin, Canty, and Griffin Memo. at pp. 11-12. The Prescribing Defendants are wrong.

To establish a claim of aiding and abetting fraud under New York law, a plaintiff must show: "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006). A plaintiff must also allege that the defendants had actual knowledge of the underlying fraud, but is not required to allege that an aider and abettor had the intent to defraud. See Krys v. Butt, 486 F. App'x 153, 157 (2d Cir. 2012) (citing Kaufman v. Cohen, 307 A.D.2d 113, 125 (1st Dept. 2003)).

As set forth above, Liberty Mutual has more than sufficiently alleged facts demonstrating the existence of a fraud, that the Prescribing Defendants had knowledge of the fraud, and that the Prescribing Defendants provided substantial assistance to the Pharmacy Defendants in advancing the commission of the fraudulent scheme. In addition, Liberty Mutual alleged that the Prescribing Defendants received kickbacks in exchange for their assistance in the commission of the fraudulent scheme, and set forth detailed allegations demonstrating that the Pharmacy Defendants acted in collusion with the Prescribing Defendants in obtaining the Fraudulent Compounded Pain Creams, and that but for the payments of kickbacks from Woodside Chemists,

the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, ¶¶ 134-144 and passim.

For example, Liberty Mutual alleges that the Prescribing Defendants knew that the Fraudulent Compounded Pain Creams had no medical efficacy and used the pre-printed "prescription stamps provided by the Pharmacy Defendants to issue the prescriptions, rather than writing out a prescription for what was supposed to be a specially tailored, patient-specific prescription." See Docket No. 1, ¶¶ 138-144. The Prescribing Defendants also signed (or allegedly signed) boilerplate or blank letters of medical necessity, which were submitted by the Pharmacy Defendants in an attempt to justify their billing for the Fraudulent Compounded Pain Creams. See Docket No. 1, ¶¶ 89-90. The Prescribing Defendants also routinely prescribed multiple refills on the initial prescriptions without first recommending that the patients try over-the-counter, FDA-approved topical medications and without documenting anything of substance in their examination reports about the need for the compounded pain cream, whether the patient used the compounded cream, or whether the patient obtained any benefit from the compounded pain cream. See Docket No. 1, ¶¶ 138-144.

Simply put, the actions of Prescribing Defendants were essential to the commission of the fraudulent scheme described in Liberty Mutual's Complaint.

Courts within this District have routinely held that similar allegations were sufficient to sustain claims of aiding and abetting fraud. See, e.g., Gov't Emples. Ins. Co. v. Alrof, Inc., 2013 U.S. Dist. LEXIS 135880, *14 - *15 (E.D.N.Y. July 19, 2013)(granting plaintiffs' motion for default judgment against aiding and abetting defendants based on allegations that the defendants provided low quality medical devices, falsified invoices to inflate reimbursements, rebated payments from other defendants back to those defendants, and received kickbacks from other

defendants); Gov't Emples. Ins. Co. v. Uptown Health Care Mgmt., 945 F. Supp. 2d 284 (E.D.N.Y 2013)(denying motion to dismiss, among other claims, aiding and abetting fraud, based on allegations that the defendants referred no-fault insureds for medically unnecessary and fraudulent healthcare services, and paid kickbacks in exchange for patient referrals); Allstate Ins. Co. v Etienne, 2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. Oct. 22, 2010)(denying motion to dismiss, among other claims, aiding and abetting fraud, based on allegations that the defendants made fraudulent misrepresentations regarding their purported healthcare services, provided tests that were not tailored to the unique circumstances of the patients, and performed tests and that were not medically necessary).

Accepting all of the allegations in Liberty Mutual's Complaint as true, and drawing all reasonable inferences in favor of Liberty Mutual (see Vietnam Ass'n for Victims of Agent Orange, 517 F.3d at 115), Liberty Mutual has more than sufficiently pleaded its claim of aiding and abetting fraud against the Prescribing Defendants. Accordingly, the Prescribing Defendants' motions to dismiss and motion for a judgment on the pleadings dismissing Plaintiffs' claims should be denied.

### C.    Liberty Mutual's Unjust Enrichment Claim is Sufficiently Pleaded

The Prescribing Defendants argue, in conclusory terms, that Liberty Mutual's claim for unjust enrichment should be dismissed because Liberty Mutual failed to sufficiently plead a claim for unjust enrichment. See Hadjiyane Memo. at pp. 13-14; see Lanter Memo. at pp. 12-13; see Tyorkin, Canty, and Griffin Memo. at pp. 12-13. The Prescribing Defendants are wrong.

To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citations omitted); see also Grafman, 655 F. Supp. 2d at 222. Unjust enrichment is an equitable principle,

"an obligation which the law creates, in the absence of any agreement, when and because acts of the parties or others have placed in the possession of one person money…under such circumstances that in equity and good conscience he ought not to retain it." Rabiner, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) (citation omitted); see also Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 423 (S.D.N.Y. 2009) (certifying a class action asserting, among other things, an unjust enrichment claim premised on a misleading advertisement); Firestone v. Miroth Const. Co., 215 A.D. 564, 565, 214 N.Y.S. 239, 240 (1st Dep't 1926) (it is "contrary to equity and good conscience" to enable a party to benefit from misleading representations).

Therefore, at the pleading stage – when all of the allegations in Liberty Mutual's Complaint are accepted as true and all reasonable inferences are drawn in favor of Liberty Mutual – Liberty Mutual need only demonstrate that the Prescribing Defendants received a benefit, that the benefit was obtained at the expense of Liberty Mutual, and that "equity and good conscience require restitution." Liberty Mutual's Complaint sufficiently pleads its claims for unjust enrichment against the Prescribing Defendants.

As set forth in the Complaint, pursuant to New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101 et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65 et seq.)(collectively, the "No-Fault Laws"), automobile insurers are required to provide No-Fault benefits to Insureds. Pursuant to a duly executed assignment of these benefits, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary goods and medical services provided. See Docket No. 1, ¶¶ 28-34. The services provided by the Pharmacy Defendants and the Prescribing Defendants, however, were not medically necessary, because, as alleged in the Complaint, the creams: (i) were not approved by the FDA; (ii) were not created by Woodside Chemists or

23

prescribed by the Prescribing Defendants to meet the unique needs of any individual patient; (iii) were prescribed pursuant to a pre-determined protocol using "prescription stamps"; (iv) had no medical efficacy based on the purported symptoms of the patients receiving the compounded products; (v) were prescribed and administered repeatedly as first line therapy contrary to evidenced-based medical practices; and (iii) were prescribed without any legitimate reason to provide the patients with expensive compounded products – which include drugs whose efficacy in topical form is undocumented and unsupported – when there are many other widely accepted, proven effective alternatives with well documented therapeutic benefits commercially available at considerably lower costs. See Docket No. 1, ¶¶ 103-126, and passim. The Prescribing Defendants plainly have, among other things, an equitable obligation not to collude with the Pharmacy Defendants, but they intentionally did so in order to unjustly cause Liberty Mutual to pay monies on the fraudulent bills submitted to it, and to profit from the fraudulent scheme.

As set forth above, Liberty Mutual has alleged that Woodside Chemists and the Prescribing Defendants were engaged in collusive kickback arrangements, and that but for the payment of these kickbacks from Woodside Chemists to the Prescribing Defendants, the Prescribing Defendants had no legitimate reason to prescribe the predetermined, medically unnecessary Fraudulent Compounded Pain Creams. See Docket No. 1, ¶¶ 134-144, and passim. Accordingly, the Fraudulent Compounded Pain Products were prescribed only pursuant to the collusive arrangements described in the Complaint, and but for the medically unnecessary prescriptions for the Fraudulent Compounded Pain Creams, the Pharmacy Defendants would not have paid kickbacks to the Prescribing Defendants.  By this scheme, the Prescribing Defendants were plainly unjustly enriched.

24

Contrary to the Defendant's argument, the fact that Liberty Mutual did not directly pay the Prescribing Defendants does not merit dismissal of Liberty Mutual's unjust enrichment claim against the Prescribing Defendants. Claims for unjust enrichment in New York are permissible even where the plaintiff does not pay the defendant directly. See Nakamura v. Fujii, 253 A.D.2d 387 (1st Dept. 1998) (permitting unjust enrichment claim where plaintiff made payments to school in which defendants' children enrolled and finding that defendants benefitted because they otherwise would have had to make such payments); Blue Cross of Cent. N.Y. v. Wheeler, 93 A.D.2d 995 (4th Dept. 1983)(upholding unjust enrichment claim where plaintiff made payments to defendant's wife for medical services and finding that defendant benefitted because defendant otherwise would have had to pay those expenses). Because Liberty Mutual would not have paid Woodside Chemists reimbursement for the Fraudulent Compounded Pain Creams if the Prescribing Defendants had not prescribed them in the first instances, and because Woodside Chemists would not have paid kickbacks to the Prescribing Defendants but for the medically unnecessary prescriptions for the Fraudulent Compounded Pain Creams, Liberty Mutual's unjust enrichment claim should not be dismissed.

Accordingly, Liberty Mutual sufficiently pleaded its claim for unjust enrichment, and the Prescribing Defendants' motions to dismiss and motion for a judgment on the pleadings dismissing Plaintiffs' claims should be denied.

## IV.   To the Extent That the Court Finds a Defect in the Complaint, Liberty Mutual Requests Leave to Replead

Liberty Mutual believes that its Complaint adequately alleges claims for common law fraud, unjust enrichment, and aiding and abetting fraud against the Defendants. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, Liberty Mutual respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint,

as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims.   When a party requests leave to amend its complaint, permission generally should be freely granted. <u>Anderson News, L.L.C. v. Am. Media, Inc.</u>, 680 F.3d 162, 185 (2d Cir. 2012).  Furthermore, there is no legitimate basis to suggest that such an amendment would be futile or that the Defendants would be prejudiced.  See <u>Oliver Schools, Inc. v. Foley</u>, 930 F.2d 248, 253 (2d Cir.1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course").

## <u>CONCLUSION</u>

For the reasons stated herein, the Prescribing Defendants' motions to dismiss and motion for a judgment on the pleadings should be denied in their entirety.   In the event that the Court finds an inadequacy in the Complaint, Liberty Mutual should be granted leave to amend.

Respectfully submitted,

RIVKIN RADLER LLP

By:    */s/ Michael Sirignano*
          Michael A. Sirignano, Esq. (MS 5263)
          Barry I. Levy, Esq. (BL 2190)
          Priscilla D. Kam, Esq. (PK 1505)
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000
*Counsel for Plaintiffs Liberty Mutual Insurance*
*Company, Liberty Mutual Fire Insurance Company,*
*Liberty Insurance Corporation, The First Liberty*
*Insurance Corporation, LM Insurance Corporation,*
*Liberty Mutual Mid-Atlantic Insurance Company,*
*Liberty County Mutual Insurance Company, LM*
*Property and Casualty Insurance Company, Safeco*
*Company of Indiana, and American States*
*Insurance Company*

3925346

26